LAURA HEISLEY *vs.* EMANUEL G. SWANSTROM.

March 5, 1889.

**Vendor and Purchaser—Statute of Frauds — Requisites of Contract.**
A contract for the sale of lands cannot rest partly in writing and partly in parol. And a modification of a written contract imposing new terms and obligations upon one of the parties thereto must be in writing, and upon a sufficient consideration.

**Contract—Construction.—**A certain contract construed.

Plaintiff brought this action in the district court for St. Louis county, to recover the sum of $500, mentioned in the agreement of April 12, 1887, set out in the opinion. The action was tried by *Stearns*, J., who ordered judgment for defendant, which was entered, and the plaintiff appealed.

*Edson, Warner & Hanks*, for appellant.

*White, Shannon & Reynolds*, for respondent.

VANDERBURGH, J. It appears from the record that on or about the 1st day of February, 1887, one William Heisley, the husband of the plaintiff, entered into a verbal agreement with defendant and several others for the purchase by them of certain lands described in the complaint, situated in Douglas county, Wisconsin, on joint account, for speculation, it being understood that the title of the property, when secured, should be conveyed to the defendant for the use and benefit of all. Heisley was to conduct the negotiations for the purchase, which were subsequently consummated at some time prior to April 12, 1887, when he caused the land to be conveyed to his wife, (this plaintiff,) which transaction the other parties to the venture claim was done to defraud them. Before the conveyance was made, and soon after the original agreement first mentioned, they had

agreed with one Boggs (also by verbal contract) to sell and convey the land to him, and received a cash payment in advance from him. Thereafter Boggs, relying on the good faith of his vendors, and their ability to fulfil the agreement so entered into with him, made a written contract, of the date of February 12, 1887, with one Sommeyer, for the sale of the land to him, which contract acknowledged the receipt of a cash payment of $300. The agreement also contained the following stipulations: "If the title is not good, and cannot be made good, this agreement shall be void, and the vendor shall not be liable for any damage, and the said sum of $300, part of the cash payment paid by the purchaser, shall be returned to him." The contract also provided for the forfeiture of the cash payment in case the title was found good, and a proper deed was executed and tendered within a time specified in the contract, and of a refusal by Sommeyer to accept the deed and make further payment as therein provided.

Boggs had no title, and never acquired, and could not acquire, any. The contract with Sommeyer, therefore, became void by its terms, and Sommeyer was entitled to a return of the money paid, and the same was subsequently returned to him; and this was, under the contract, the limit of the damages which he was entitled to recover. Subsequently, and after the conveyance to plaintiff above referred to, the parties first named entered into another contract for the sale of the land to Ely & Skahen, for the sum of $6,000, which was considerably more than Boggs had agreed to pay therefor, and more than he had contracted the same to Sommeyer for. The vendors, including Heisley and this defendant, thereupon agreed upon a division of the proceeds, and by the terms of such agreement Mrs. Heisley, the plaintiff, was to receive a certain sum in cash, part of the purchase-money, subject to the conditions expressed in an instrument of which the following is a copy:

"UNITED STATES LAND-OFFICE, April 12, 1887.

"Whereas, the land in Wisconsin, bought in the name of Laura Heisley, has been sold to Ely & Skahen, of Milbank, Dakota; and whereas, certain claims under contract are claimed by one Sommeyer, of Minneapolis: now, therefore, it is agreed that Emanuel Swan-

strom shall hold in his hands $500 of the proceeds of said sale belonging to Laura Heisley, for the period of thirty days, to abide the result of said claim by said Sommeyer; and if it shall appear either that William Heisley has settled said claim with said Sommeyer, or that no legal and valid claim exists in favor of said Sommeyer against Boggs or Swanstrom, Marble, Chamberlin, or Heisley, then said money shall be returned to said Heisley, on demand.

"E. G. SWANSTROM."

The case turns upon the question whether Sommeyer had a valid claim for damages against Boggs, growing out of the contract of the latter with him. William Heisley did not settle this claim, but within the 30 days, and prior to the 23d day of April, 1887, he notified Swanstrom that he would not do so, and that he had seen the contract between Boggs and Sommeyer, and that there was no legal claim for damages against Boggs thereunder. On the 23d day of April, 1887, as the court finds, "Sommeyer made claim for damages against Boggs on account of his failure to convey the land under the contract with him; and defendant, regarding the equity and justice thereof, paid him the sum of $500 in settlement of the same." This claim of Sommeyer was independent of the instalment of purchase-money, to the return of which he was entitled by the terms of the agreement. The circumstances under which the deposit was made with Swanstrom show that the money was Mrs. Heisley's, subject to be applied as stated in defendant's receipt. It did not authorize the defendant to pay over the money to Sommeyer without the consent of the Heisleys, if Sommeyer had no legal or valid claim to it; nor did the plaintiff lose her right to the money in defendant's hands by her failure to establish the groundlessness of his claim within the 30 days named. That time was reserved for investigation; and, if defendant had not paid Sommeyer in the mean time, no suit could have been maintained by plaintiff for the deposit within that period; and, conceding that by the terms of this receipt or contract the burden rested on plaintiff, in establishing her right to recover it, to show that Sommeyer had no valid claim, she might do so in the same action; and, as his claim depended wholly upon his contract with

Boggs, a *prima facie* case was made by her when she produced that contract.

But the court finds "that Boggs, after the execution of his contract with Sommeyer, verbally promised him that if. he would wait, and not buy other lands, he [Boggs] would deliver those in question, and that if he failed to do so he would pay all damages; and said Boggs regarded the justice of the claim, and settled it, paying the said Sommeyer the sum of $500 in settlement." The evidence shows that this new verbal agreement was made about April 7th. The case, then, is still further narrowed down to the question of the validity and sufficiency of this alleged new agreement. The plaintiff contends that it was invalid, because not in writing, and because without consideration. The written contract between them provided for a rescission and restoration of the purchase-money. The time for the delivery of the deed had passed, and Boggs had not acquired the title. The alleged new agreement was made before the one signed by the defendant, which is the foundation of this suit. It was undoubtedly competent for the parties to waive a forfeiture or strict performance as to time, and to consent to performance of the contract in a modified form; so that such substituted performance should stand as a fulfilment of the same by virtue of the acts of the parties. So, in this case, Sommeyer might waive the stipulation as to the time for tendering the deed, or consent to treat it as not being essential, and the contract be kept in force, waiting negotiations for perfecting the title. But the supplemental contract, relied on in this case to establish a valid legal claim for damages subsisting against Boggs in favor of Sommeyer, on the 12th day of April, when defendant's agreement was made, was a modification of the original contract in an essential particular, by substituting a new and independent stipulation therein. Being a contract for the sale of lands, and within the statute of frauds, it could not rest partly in writing and partly in parol. In such cases, if new terms are sought to be ingrafted upon the original contract, they must be reduced to writing; otherwise the modified agreement cannot be proved. This is the more generally received doctrine as respects contracts required to be in writing by the statute of frauds, in contradistinction to other classes of contracts. 1 Chit. Cont. 154;

1 Add. Cont. *201; Bish. Cont. § 771; Browne, St. Frauds, §§ 411, 414 *et seq.;* Wood, St. Frauds, 758; *Emerson* v. *Slater,* 22 How. 28, 42; *Blood* v. *Goodrich,* 9 Wend. 68, (24 Am. Dec. 121;) *Dana* v. *Hancock,* 30 Vt. 616; *Abell* v. *Munson,* 18 Mich. 306, (100 Am. Dec. 170, and cases cited;) *Ladd* v. *King,* 1 R. I. 224, (51 Am. Dec. 624;) *Brown* v. *Sanborn,* 21 Minn. 402; *Hewitt* v. *Brown,* Id. 163.

To be obligatory upon Boggs, the agreement must be supported by a sufficient consideration. But this is neither proved nor found by the court. The evidence fails to disclose any consideration for his alleged new promise. The only evidence on the subject is his, in which he states in substance that he offered to pay him (Sommeyer) such damages as he should sustain in addition to a return of the purchase-money, if he (Sommeyer) would stand by his agreement. But it does not appear that the latter accepted the proposition. His conduct amounted to a temporary waiver of the delay, perhaps, but there was no new and binding stipulation or agreement as to damages shown to have been made, which he could enforce against Boggs.

Judgment reversed.