TORKEL THOMPSON v. DAVID L. THOMPSON.

December 18, 1899.

78    379
f83    501

Nos. 11,863—(163).

Grain—Warehouse Receipt—Insurance.

A storage receipt for wheat delivered at a public elevator, after stating the rate of storage, contained the following clause: "This charge for storage shall cover loss by fire only; all other damage, by the elements, or by heating, or riot, or by the act of God, or which in any way has

been caused by the holder of this receipt, shall be excepted." *Held*, this, by implication, constituted a contract of insurance by the warehouseman against loss by fire.

## Modification of Contract.

*Held*, by a subsequent agreement modifying the contract so as to provide that no charge should thereafter be made for storing the grain, this implication dropped out, and thereafter the warehouseman was not such insurer.

## Receipt—Variation by Parol Agreement.

*Held*, such storage receipt, signed by the agent of the warehouseman, constituted a written contract, the terms of which could not be varied by a prior or contemporaneous verbal contract.

## Same.

The defendant, Thompson, was doing business in the name of Smith & Thompson, and the storage receipt was signed in that name. *Held*, the terms of the receipt cannot for that reason be varied by parol, except so far as to explain the fact that defendant was doing business under such firm name.

## G. S. 1894, § 7646.

*Held*, G. S. 1894, § 7646, requiring a storage receipt, reciting certain facts, to be issued when the grain is deposited, does not prohibit a subsequent modification of such receipt by an independent verbal agreement.

## Consideration.

*Held*, there was sufficient consideration for such a modification.

## Rate of Storage.

The storage receipt provided that the rate of storage "shall not exceed four cents for six months." *Held*, this was intended to fix the rate of storage, and not the duration of the bailment.

## Assignment of Receipt.

*Held*, such contract of insurance passed by a transfer of the storage receipt.

On Reargument.

January 31, 1900.

Upon reargument of this case this court recedes from its former ruling, and now holds that a receipt issued under the provisions of G. S. 1894, § 7646, for the storage of grain, cannot be subsequently modified or changed by parol.

Action in the district court for Dakota county to recover the amount of loss arising from destruction by fire of 15,642 bushels of wheat stored in defendant's elevator. The case was tried before Crosby, J., who found in favor of defendant; and from a judgment entered pursuant to the findings, plaintiff appealed. Reversed.

*E. T. Young*, for appellant.

*Hodgson & Schaller* and *W. H. De Kay*, for respondent.

CANTY, J.

Smith & Thompson were operating a public elevator for the storage of grain at Appleton, Minnesota, for some time prior to the death of Smith, in June, 1894. After his death, Thompson, this defendant, operated the elevator until it and its contents were destroyed by fire, on June 30, 1896. At the time of the fire there were stored in the elevator 19,034 bushels of No. 1 wheat, all intermingled in a common mass. At that time plaintiff had in store in the elevator 4,125 bushels of this wheat, for which he held storage receipts. Other persons held storage receipts for other portions of the wheat, amounting to 11,517 bushels; and these receipts were transferred to plaintiff after the wheat was so destroyed, but before the commencement of this action. This action was brought to recover the value of all of said 15,642 bushels of wheat, under the claim that, by the contract of storage, defendant had insured all of this wheat against loss by fire while so stored. On the trial before the court, sitting without a jury, the court found for defendant, and plaintiff appeals from the judgment.

One Sinnott was the agent of Smith & Thompson in managing the business, and continued to be the agent of defendant, Thompson, after the death of Smith. So far as here material, the printed blank form of storage receipt used by Smith & Thompson was as follows:

"La Grange Elevator of Appleton, Minn.
"Smith & Thompson, Proprietors.
"—— bush. no. —— wheat ——. price, —— cents.
"Received in store ——, 189–, account of —— or order, —— bushels no. —— wheat.
"Which amount, kind, and grade of grain will be delivered to the holder of this receipt, upon surrender thereof, subject to the following conditions as to storage, etc.: The first 15 days from date here-

of, or fractional part thereof, one-half cent per bushel, but shall not exceed four cents for six months. This charge for storage shall cover loss by fire only; all other damage, by the elements, or by heating, or riot, 'or by the act of God, or which in any way has been caused by the holder of this receipt, shall be excepted. * * *

"Smith & Thompson, Proprietors.

"By T. Sinnott."

Defendant, Thompson, used these same blank forms when issuing receipts, and the same were signed, after the printed signature, "Smith & Thompson, Proprietors," as follows: "By T. Sinnott." All of the receipts here in question, issued for said 15,642 bushels of wheat, were in this form; and plaintiff relies on the words, "This charge for storage shall cover loss by fire only," as constituting the contract of insurance against fire, by which he claims defendant is liable for the value of the wheat.

1. In our opinion, the clause does constitute such a contract.

2. To avoid the effect of this, the defendant pleaded in his answer that before the fire, and after the delivery of the wheat and the issuing of the storage receipts in the various instances, he entered into a subsequent and independent contract with each of the holders of such receipts, whereby it was agreed that defendant should thereafter store the wheat free of charge for a specified length of time in each case, during which time the fire occurred. In our opinion, the defendant thereby pleaded a good defense. Such contract for insurance arose merely by implication from the language used, and, if no charge was made for storage, this implication would drop out. In other words, there being no charge for insurance, it would, under the peculiar language used, mean that there was to be no insurance.

3. But each of the receipts so issued constitute a written contract, the terms of which cannot be varied by an oral agreement made at or prior to the time the receipt was issued. The application of this rule to this case leads to reversal.

The trial court ordered judgment for defendant, but neither the findings nor evidence will support the judgment which was entered pursuant to that order. The court found that an agreement was made between defendant and each of the persons depositing grain or holding storage receipts that defendant should thereafter store

the wheat free of charge, as aforesaid. But, as to part of the wheat, the court found that the agreement was made when the wheat was deposited. As to another part, the court failed to find whether the agreement was made before, or at the time of, or after the wheat was deposited and the receipts issued. As to the rest of the wheat, the court found that the oral agreement was made after the wheat was deposited and the receipts issued; but the finding is not sustained by the evidence, which is to the effect that a portion of this part of the wheat was deposited before the oral agreement was made respecting it, and a portion after the same was made. Neither does it appear from the evidence how much was deposited before, and how much after, such oral agreement was made. In fact, with respect to the greater part of the wheat, the evidence is much confused as to whether the oral agreements were made before, at the time of, or after the storage receipts were issued. Much of this evidence is not competent in the absence of a counterclaim in the answer seeking to have reformed the receipts to which the evidence applies, as the effect of the evidence would be to vary the terms of a written contract by parol, and not to prove a subsequent oral modification of a written contract.

4. The fact that defendant was doing business in the name of Smith & Thompson does not, beyond the explanation of that fact, affect the rule that the written contract contained in the storage receipt cannot be varied or contradicted by a prior or contemporaneous verbal agreement.

5. G. S. 1894, § 7646, provides:

"Whenever any grain shall be deposited in any warehouse, elevator, or other depository, for storage, the bailee thereof shall issue and deliver to the person so storing the same, a receipt or other written instrument, which shall, in clear terms, state the amount, kind and grade of the grain stored, the terms of storage," etc.

Appellant contends that by reason of this section the contract contained in the storage receipt cannot be modified by a subsequent verbal contract. We cannot so hold. The statute merely requires that a written receipt, specifying certain facts, shall be delivered when the grain is deposited, and does not prohibit the subsequent modification of such receipt by an independent verbal agreement.

6. We are of the opinion that there was sufficient consideration for such a subsequent modification of the contract.

7. Neither can we hold that, by virtue of the provision in the storage receipt that the rate of storage "shall not exceed four cents for six months," the contract found in such receipt expired at the end of six months after the receipt was issued, even though the receipt was not surrendered, no effort was made to terminate the contract, and the wheat still remained on deposit. Such provision was intended to fix the rate of storage, and not the duration of the bailment.

8. We are also of the opinion that the contract of insurance passed by a transfer of the storage receipts. This disposes of the case.

Judgment reversed, and a new trial granted.

COLLINS, J.

I dissent from that part of the opinion in which it is held that there may be a subsequent modification of a storage receipt issued under the provisions of G. S. 1894, § 7646, by an independent verbal agreement. The purpose of the statute is to compel warehousemen to put their contracts of storage in writing; and, unless the words "Not negotiable" are plainly stamped across the face of the instrument, its transfer and delivery are equivalent to a transfer and delivery of the property itself. Section 7649. It seems to me that the intent of the legislature was to prohibit and prevent the making of anything but a written contract. This decision will invite and permit the evasion of a very wholesome law. I concur on the other points decided.

BROWN, J.

I agree with Associate Justice COLLINS.

On January 31, 1900, the court rendered the following decision:

LOVELY, J.

This case has, by the direction of the court, been reargued upon the single contention whether the verbal modification of the terms of certain warehouse receipts adopted subsequently to the execution and delivery of the same constituted valid and enforceable contracts under the warehouse laws of this state.

When the case was previously considered, two members of this court as then constituted—COLLINS and BROWN, JJ.—dissented from the view therein adopted by the majority, viz. that such parol modification might be legally entered into between the original parties, and that the contract, when so modified, might be enforced. But upon further reflection the court were not satisfied that sufficient importance had, in their previous view, been attached to the public nature of the statute under which the receipts had been issued, or that public policy required these receipts to be made an exception to the usual common-law rule which permits written agreements to be changed by subsequent oral consent of the parties. We have fully considered the question involved, and are of the opinion that the ruling of the court upon the former hearing, in the respect referred to, cannot be allowed to remain as the authority of this court; while we adhere otherwise to the result therein reached.

It will not be necessary to set out either the statutes or the facts involved, as they are stated at length in the opinion of Justice CANTY on the former hearing. The particular provision of the warehouse receipts involved related to the charges for storage and the insurance of the grain described therein,—matters which, under the terms of the statute (G. S. 1894, § 7646), are expressly required, by its very terms, to be "in writing." The amount of charges for storage under this law must be stated in the receipt when issued (in this case after the receipts were issued). The obligation to insure in the original contract by the warehouseman on one side was, as claimed, waived by the owner of the receipts upon condition that no charges should be made for storage, which agreement was evidenced only by the verbal understanding of the parties.

The necessity of enforcing the warehouse laws of this state, and particularly those portions providing for the storage of produce, cannot be easily exaggerated. The tickets designating the amount of grain, charge for storage, and the ownership of the property pass from hand to hand among our citizens, in ordinary commercial transactions, in lieu of the grain itself, and are symbolic both of the title which actually passes by such transfers and of the money value which the property is worth at any given time, constituting the warehouseman a bailee of the owner, and subjecting him to

severe penal consequences should he make misstatements therein, or to prosecution for felony should he dispose of the property intrusted to his care without consent of the owner. In view of the extensive interests involved, which have excited the solicitude and received the constant and earnest attention of the legislature to protect the agricultural interests of this commonwealth, as well as the danger of defeating the objects to be attained by the law, these statutory contracts of bailment should be in writing; should be definite and certain, not only when issued, but definite and certain as long as they continue to represent the title to the property, and so long as they stand for exact money values in the business transactions of daily life. It was a wise purpose of the legislature that led to the enactment of the warehouse laws of this state, and that required receipts issued thereunder to be in writing, and it was evidently the purpose of the lawmakers that no change of such contracts should be made subsequently, unless the same was also expressed in writing; for, while such receipts continue to be contracts of bailment, and negotiable, they should, for the same reasons, continue to be as certain and definite as writing can make them, and ought not to be changed by oral modifications that cannot but involve all transactions with them in uncertainty and confusion, and so destroy their efficiency for the purposes intended by the lawmakers.

There is abundant authority to support the view that a contract which public policy requires to be in writing cannot be changed or modified by parol. State v. Stevenson, 52 Iowa, 701; Sykes v. People, 127 Ill. 117, 19 N. E. 705; Teal v. Bilby, 123 U. S. 572, 8 Sup. Ct. 239; Seaman v. O'Hara, 29 Mich. 65, 66; Leonard v. Dunton, 51 Ill. 482; Brown v. Sanborn, 21 Minn. 402; Heisley v. Swanstrom, 40 Minn. 196, 41 N. W. 1029; Burns v. Fidelity Real-Estate Co., 52 Minn. 31, 53 N. W. 1017. For the reasons above stated, we hold that the modification of these receipts, made subsequent to their execution, was invalid, and that these contracts must be interpreted upon their original provisions expressed in writing.

Judgment reversed, and new trial granted.