## A. N. NIETER v. THE McCAULL-DINSMORE COMPANY.[1]

May 23, 1924.

No. 23,947.

**Construction of North Dakota statute.**

1. The statute of North Dakota relating to the storage of grain, as construed in Kastner v. Andrews, 194 N. W. 824, creates the relation of bailor and bailee between the owner of the grain and the warehouseman with whom it is stored. The warehouseman cannot give good title after the quantity of grain in the warehouse is less than the aggregate required to satisfy outstanding storage receipts.

**Construction of warehouse receipts for grain.**

2. The terms of such receipts do not preclude the holder from consenting to the sale of the grain by the warehouseman. A sale is rightful and gives title to the purchaser if such consent is given.

**Consent of receipt holder to sale by warehouseman.**

3. Consent is not to be inferred from the fact that a receipt holder is familiar with the custom prevailing among warehousemen of shipping and selling grain held in storage. Whether it may be inferred, depends upon the facts in the particular case. It does not change the relations of the parties before the grain is sold. If the sale was authorized, the legal rights of the parties are determined by the law of agency.

**Estoppel of appellant.**

4. The evidence warrants the conclusion that the receipt holders acquiesced in the shipment of their grain by the warehouseman to

[1]Reported in 199 N. W. 85.

the respondent for sale on commission, and justified the trial court in finding that appellant is estopped from asserting that there was a conversion of the grain. The question whether an estoppel exists is one of mixed law and fact.

Action in the district court for ·Hennepin county to recover $11,445.15 for conversion of grain. The case was tried before Dickinson, J., who made findings and ordered judgment in favor of defendant. From an order denying his motion for an order amending the findings and conclusions or for a new trial and from an order granting defendant's motion for amended findings, plaintiff appealed. Affirmed.

*W. H. Stutsman* and *Jacobson & Murray*, for appellant.

*Cobb, Wheelwright, Hoke & Benson* and *L. M. Staples*, for respondent.

LEES, C.

Appellant is the assignee of a large number of storage receipts issued for grain stored in a public elevator operated by the New Leipzig Equity Exchange in the village of New· Leipzig, North Dakota. Respondent is a Minneapolis dealer in grain, buying and sell-ing it for others on commission.

On July 23, 1920, respondent entered into a contract with the exchange, whereby the former agreed to advance money and give credit to the latter to an amount not exceeding $25,000. In consideration thereof it was agreed that 80 per cent of the grain purchased by the exchange should be consigned to respondent for sale on commission.

The receipts in question were issued between August 30, 1920, and March 14, 1921, and represent grain of the alleged value of $11,445.15. Between September 18, 1920, and April 25, 1921, the exchange shipped 52 cars of grain to respondent. It sold the grain and credited the exchange with the net proceeds. There is a balance of $11,729.53 still due to respondent for advances made to the exchange. The exchange is insolvent. In an endeavor to collect pay for the grain, appellant brought this action, alleging a conversion by respondent.

1. The statutes of North Dakota relating to the storage of grain have been considered by the supreme court of that state in several cases. Kastner v. Andrews, 194 N. W. 824, is the most recent and refers to the earlier decisions. It was determined that the relation between the holder of a storage receipt, in the form prescribed by the North Dakota statute, and the warehouseman is that of bailor and bailee; that a warehouseman has the right to mingle stored grain with other grain and thus destroy its identity, but nevertheless the relation of bailor and bailee continues as it was in the beginning, and that, after the point is reached where the grain in the warehouse is reduced to a quantity below the aggregate required to satisfy outstanding receipts, the warehouseman cannot confer good title upon a purchaser of the grain remaining in the elevator. We accept this construction of the statute as final. Bronson v. St. Croix Lbr. Co. 44 Minn. 348, 46 N. W. 570; Lewis, Sutherland St. Const. p. 22. Under this construction, the statute does not confer upon a warehouseman authority by implication to sell stored grain, but we do not agree with appellant's counsel that the acts of the owner of the grain cannot bring about a situation which will estop him from asserting that the sale was wrongful.

2. The provision of the North Dakota statute upon which appellant relies reads thus:

"No such warehouseman shall insert in any warehouse receipt issued by him any language in anywise limiting or modifying his liability as imposed by the laws of this state." Comp. Laws N. D. 1913, § 3112.

This court has held that the receipt prescribed by our statute cannot be modified or changed by a subsequent verbal agreement, Thompson v. Thompson, 78 Minn. 379, 81 N. W. 204, 543, but not that the holder cannot authorize the warehouseman to ship and sell the grain without surrendering the receipt. On the contrary it has been held that, notwithstanding the terms of the receipt, the holder may consent to the sale of the grain and, when he does, the sale is rightful and gives title to the purchaser. Hall v. Pillsbury, 43

Minn. 33, 44 N. W. 673, 7 L. R. A. 529, 19 Am. St. 209; Mann v. Lamb, 83 Minn. 14, 85 N. W. 827.

No statute of North Dakota expressly forbidding the shipment or sale of stored grain has been called to our attention. Section 3113, Comp. Laws, provides that the holder of a storage receipt may require delivery at a terminal point of grain equal in quantity and quality to that covered by the receipt, and, unless it was placed in a special bin, delivery of the identical grain described in the receipt cannot be required. Our statute is different, and leaves no room for an inference that the shipment of grain in storage is permissible. It requires express authority from the owner and the return of the storage receipt. Section 4438, G. S. 1913. But, in spite of the requirement, it was said in the cases cited that the consent of the owner to the sale of his grain makes the sale rightful. The same conclusion is inevitable when we consider the less drastic provisions of the North Dakota statute.

3. Consent is not to be inferred from the fact that the owner is familiar with the custom prevailing among warehousemen of shipping and selling grain held in storage. Something more must be shown, and whether the showing is sufficient to establish consent necessarily depends on the facts in the particular case. Consent to as sale does not change the relations of the parties. Until the grain is sold, the warehouseman remains a bailee. When sold with authority, the purchaser gets good title and the bailor's right to follow the grain is gone. There is no reason why a bailor may not make the bailee his agent to sell. If he does and a sale is made, the legal rights of all concerned are determined by the law of agency. 6 C. J. p. 1091.

4. The trial court found that appellant was estopped from denying the authority of the exchange to sell the grain. That conclusion necessarily rests on the nature and quantum of proof of consent.

Estoppel is one of the subjects discussed in Kastner v. Andrews, but on that point the decision is not binding upon us, being entitled only to the consideration due to a well-considered opinion of the court of last resort of a sister state.

If appellant's assignors consented to the shipment of their grain to a terminal market, there was no unauthorized dominion over their property before it was sold in the market, and hence an action of conversion would not lie on the score of the shipment of their grain. Griffin v. Bristle, 39 Minn. 456, 40 N. W. 523; Carlson v. Schoch, 141 Minn. 236, 170 N. W. 195. We think there was abundant proof of consent to the shipment of the grain. When the grain was delivered to the exchange it must have been known that it would not remain in the elevator until called for. The capacity of the elevator was only 26,000 bushels, and its patrons knew that frequent shipments had to be made to make room for grain brought in from time to time.

The proof of consent to the sale of the grain at Minneapolis is less convincing. Some of appellant's assignors knew that the grain would be sold and did not object. Some knew how the exchange conducted its business. Several were interested in it as stockholders.

The last car of grain was shipped to respondent on April 25, 1921. When the elevator was closed in June, the storage receipts were in the possession of the manager. The holders had given them to him, and when he left he gave them to the secretary of the exchange. The receipts had been surrendered by the holders in exchange for checks drawn on local banks by the exchange. For lack of funds most of the checks were returned unpaid. Thus it appears that after all their grain had been shipped to Minneapolis and sold, instead of attempting to follow or claim it, appellant's assignors elected to look to the exchange for payment. They must have known that it was then on the verge of insolvency. If they had not consented to the sale of their grain, it is difficult to understand why they took the checks and gave up their receipts. Their conduct is persuasive evidence of knowledge of and acquiescence in what had been done by the exchange.

There is another important circumstance to be considered. Respondent received and sold the grain as the agent of the exchange and its liability is no greater. It has been held that, if a warehouseman has a right to ship stored grain to a terminal market and sell

it there, the commission merchant incurs no liability in making the sale for the warehouseman. Nicholson v. H. Poehler Co. 284 Fed. 992. The contract between respondent and the exchange provides that the former may make sales in its name for the latter according to the usages and regulations of the grain exchanges where the grain is sold. Other provisions in the contract indicate that respondent was to handle the grain shipped to it as a commission merchant and account for the proceeds of sales. A reading of the whole contract leaves little doubt about the relations of the parties from a legal standpoint. Respondent was the agent of the New Leipzig Exchange to sell the grain in the Minneapolis market, and was not a purchaser. The rule is that the liability of an agent, who assists his principal in disposing of the property of another entrusted to the possession of the principal, depends upon the agent's knowldge of the wrongfulness of the principal's act and his participation therein. Leuthold v. Fairchild, 35 Minn. 99, 27 N. W. 503, 28 N. W. 218; Dolliff v. Robbins, 83 Minn. 498, 86 N. W. 772, 85 Am. St. 466; Schall v. Northland Motor Car Co. 123 Minn. 214, 143 N. W. 357. There is no evidence of such knowledge on the part of respondent. It is a fair inference that it knew of the practice prevailing among the managers of country elevators of shipping stored grain to terminal markets for sale. But knowledge of the practice did not carry with it notice that the grain received by respondent was in fact stored grain. For these reasons we conclude that the ultimate finding of estoppel was warranted and presents an insurmountable obstacle to a recovery from respondent. It is a mixed question of law and fact, Maxwell v. Bay City Bridge Co. 41 Mich. 453, 2 N. W. 639, 21 C. J. 1253, and, in reviewing it, we are guided by the rule requiring us to sustain a finding not contrary to the clear weight of evidence.

The order denying a new trial is affirmed.