EMANUEL HUETHER, Respondent, v. McCAULL-DINSMORE COMPANY, a Corporation, and Havelock Equity Exchange, a Corporation. McCAULL-DINSMORE COMPANY, a Corporation, Appellant.

(204 N. W. 614.)

**Trover and conversion — evidence held sufficient to establish conversion and value of grain.**

  1. This action was brought to recover damages for the conversion of certain

---

Note.—(6) Definition of special verdict, see 27 R. C. L. 834.

(7) Title of depositors of grain mingled in warehouse, See 27 R. C. L. 979.

    52 N. D.—46.

grain deposited with the defendant, Havelock Equity Exchange, a North Dakota corporation doing business as a public warehouseman, and sold in the terminal markets by the defendant, McCaull-Dinsmore Company, a corporation, engaged in the grain commission business. Plaintiff claimed a conversion of grain stored by him and of grain on which he had a seed lien. He recovered on both causes of action. The record examined, and *held* for reasons stated in the opinion, that the evidence is sufficient to establish a conversion both of the grain stored and of the grain on which the lien was claimed, and the value of such grain at the dates of conversion.

**Warehouseman — knowledge that warehouseman will commingle grain with other grain and ship it out of state does not estop owner from recovering for conversion against commission merchant.**

2. Where the owner of grain stores it in a public warehouse with knowledge that the warehouseman will commingle such grain with other grain and ship it out of the state, the owner is not thereby estopped from recovering for the conversion thereof against the commission merchant who sells the grain at the terminal market. But such knowledge on the part of the owner that the grain will be commingled with other grain and shipped, is a circumstance to be taken into consideration in determining whether he authorized, consented to, or ratified the sale thereof.

**Seed lien — substantial compliance with lien statute essential; seed lien statement held sufficient.**

3. A seed lien is wholly statutory in its nature and origin, and cannot be acquired or enforced unless there is a substantial compliance with the statute under which it is claimed. *Held*, for reasons stated in the opinion that the lien statement herein involved sufficiently complies with the requirements of the statute, Comp. Laws, 1913, § 6852.

**Witnesses — one directing business affairs of corporation held "managing agent", and subject to examination by adverse party.**

4. One who directs the business affairs of a corporation in accordance with the policy adopted by its governing board and has charge over and supervision of its principal office and custody and control of its books and records, is a managing agent within the meaning of that term as used in § 7870, Comp. Laws, 1913, providing "that the directors, officers, superintendent or managing agents of any corporation which is a party to the record in such action or proceeding, may be examined upon the trial thereof as if under cross examination at the instance of the adverse party."

**Evidence — admission of certain evidence held not erroneous.**

5. Various assignments of error on account of rulings of the trial court on objections to the admission of evidence examined and *held* for reasons stated in the opinion not erroneous.

**Trial — special verdict defined; advising jury as to legal effect of answers, error; not instructing jury as to measure of damages, held not error.**

6. A special verdict is one by which the jury find the facts only, and the trial judge determines their legal effect. Morrison v. Lee, 13 N. D. 591. In submitting a case to a jury for a special verdict, it is error for the court to advise the jury as to the legal effect of the answers to the questions submitted. Instructions complained of examined and *held*, for reasons stated in the opinion not erroneous.

**Warehousemen — holders of storage receipts may sue converter only for amount of grain owned by each, less portion remaining in storage.**

7. Where various owners of grain store the same in a public warehouse and such grain is commingled, the owners thereof are owners in common of the resulting mass. In case of conversion of any part of such mass, the several storage receipt holders can maintain actions against the converter only for the amount of grain owned by each, less that portion of the common mass remaining in storage to which such holder is entitled an owner in common.

**Trover and conversion — measure of damages for conversion of grain stored in warehouse stated.**

8. Where an action in conversion is brought by the owner of grain stored in a public warehouse in North Dakota, by reason of the sale of the grain at a terminal market in Minnesota, the measure of damages is the value of the grain at the time and place of conversion less storage charges to the date thereof, plus freight charges from the local market to the terminal market.

**Warehousemen — owner of storage receipt who sues on bond can recover only excess of claim above amount realized from bond.**

9. Where grain stored in a public warehouse is converted, the owner of the storage receipts representing such grain has a right of recourse against either or both the warehouseman's bond and the parties to the conversion. Where such owner exercises his right of recourse against the bond and realizes a part of his claim on account thereof, he cannot exact the whole amount of his original claim from the converter, but is entitled to recover only the excess of his claim above the amount realized from the bond.

Opinion filed May 29, 1925.

Agency, 2 C. J. § 501 p. 827 n. 81. Agriculture, 2 C. J. § 61 p. 1006 n. 3; § 82 p. 1012 n. 85; § 99 p. 1015 n. 48. Trial, 38 Cyc. p. 1774 n. 41; p. 1869 n. 91. Trover and Conversion, 38 Cyc. p. 2056 n. 38; p. 2086 n. 25; p. 2088 n. 32; p. 2092 n. 56; p. 2094 n. 60, 61; p. 2104 n. 16. Warehousemen, 40 Cyc. p. 407 n. 79 New; p. 414 n. 23, 24; p. 449 n. 13; p. 474 n. 16; p. 481 n. 41, 42. Witnesses, 40 Cyc. p. 2472 n. 17.

Appeal from the District Court of Hettinger County, *Berry, J.*
Modified and affirmed.

*Sullivan, Hanley & Sullivan,* for appellant.

The rule is that the agent who assists his principal in disposing of the property of another entrusted to the principal is not liable for the wrongful conversion of the property or his participation therein unless he had knowledge that such act was wrongful or would have had such knowledge but for gross negligence. Leuthold v. Fairchild, 35 Minn. 99, 27 N. W. 503; Ashcroft v. Tucker (Colo.) 215 Pac. 877; Roach v. Turk, 9 Heisk. 708, 24 Am. Rep. 360; Farguson v. Ball, 128 Tenn. 137, 159 S. W. 221; 159 Minn. 395, 199 N. W. 85.

Where the depositor knows that the property is to be commingled with that of the warehousemen, and that the latter is selling and publicly shipping from the common mass, he may be estopped from asserting title as against an innocent purchaser in the usual course of business. 27 R. C. L. p. 981.

A person who stands by with a thresher's lien and permits a sale is estopped from suing in conversion the party who purchased grain subject to his lien. Branthover v. Monarch Elevator Co. 33 N. D. 454, 156 N. W. 927.

One who owns or has an interest in personal property, with full knowledge of his rights, suffers another to deal with it as his own by selling or pledging it, or otherwise disposing of it, in such case there can be no doubt that an estoppel exists. 16 Cyc. 762–764.

An estoppel is fundamentally based upon the idea that "he who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to keep silent." 16 Cyc. 681; Branthover v. Monarch Elev. Co. 33 N. D. 454, 156 N. W. 927.

The term market implies competition. Watts v. Western, 62 Fed. 136.

Where the subject of the price is an article commonly dealt in, this price will be fixed in a more or less definite sum by the concensus of all the buyers and sellers dealing in the article. Carey Lithographic Co. v. Magazine & Book Co. 70 Misc. 541, 127 N. Y. Supp. 300.

To constitute a market value, it must appear that similar articles have been bought and sold in the way or trade in sufficient quantity or frequency. Harris v. Panama R. Co. 58 N. W. 660.

If the contract or conduct of the parties fixed a day so that the right of recovery, strictly considered, turns on the then market value, the evidence should be directed to the market value on that precise day, and not extend to the ordinary market value at other times. Cahen v. Platt, 69 N. Y. 353; Belden v. Nicolay, 4 E. D. Smith, 14; Houghton Implement Co. v. Doughty, 14 N. D. 33, 104 N. W. 516.

But if there were no sales then, or if the sales had are shown to have been at fictitious prices, or at prices unnaturally inflated or depressed by artificial combination for the purpose of fixing a false price, evidences of prices before and after the day within a reasonable limit resting in judicial discretion, is competent for the purpose of inferring the value on the precise day. Dana v. Fiedler, 12 N. Y. 40; Cahen v. Platt, 69 N. Y. 352; Kountz v. Kirkpatrick, 72 Pa. 376, 13 Am. Rep. 687.

*Jacobsen & Murray.* for respondent.

A note given conditionally does not operate as payment for redemption of storage tickets. State ex rel. Olson v. Royal Indemnity Co. (N. D.) 175 N. W. 625.

The court may take judicial notice of the fact, one of common knowledge throughout the state, that the market prices of grain, particularly of wheat, in North Dakota, are determined by, and are but the reflex of, prices paid for the same grades of grain at certain centers in the country, like Minneapolis, Minn., Chicago, Ill., and other points, after taking into consideration the cost of transportation, insurance, handling charges, and the like. Grain buyers at points in North Dakota receive daily market reports, cards, or bulletins, showing the prices, the different kinds and grades of grain, which become the basis for prices at local points in this state. Upon the reports thus received, local market prices are fixed from day to day. There is a market in the technical and legal sense, for wheat at Killdeer, N. D., as there is in nearly every city and village in the state situated upon a railroad. Weigel v. Powers Elevator Co. 194 N. W. 113.

The description of a crop is sufficient if it be such that a prudent, disinterested person, aided and directed by such inquiries as the instrument itself suggests, is able to identify the property. 11 C. J. 468, § 96.

The person who, as its agent, does that business, should be con-

sidered its managing agent; and more especially should that be so where the foreign corporation has an office or place of business in the state; and when that office is in charge of that person, and he there acts for the corporation, he is there doing business for it, and so manages its business. Brown v. Chicago, M. R. Co. 95 N. W. 153.

Preliminary proof of the loss or destruction of primary evidence does not involve the question in issue and is not regarded as evidence in the cause; it is addressed solely to the trial court and its sufficiency is a question for that court and not for the jury. Moreover the sufficiency of the evidence on the preliminary proof rests in the sound discretion of the trial court, whose determination will generally not be disturbed by an appellate court. 22 C. J. 1052, § 1352.

Ordinarily the value of property which may be so recovered is that which it had at the time and place of conversion. Dearborn Truck Co. v. Nedroloc (N. D.) 193 N. W. 311.

NUESSLE, J. This action was brought to recover damages on account of the conversion of certain grain.

Plaintiff is a farmer residing near Havelock, North Dakota. The defendant McCaull-Dinsmore Company is a corporation engaged in the grain commission business at Minneapolis, and a member of the Chamber of Commerce of that city. The defendant Havelock Equity Exchange was a corporation, nearly all of whose stockholders were farmers in the vicinity of Havelock. The Exchange was incorporated in 1910. It owned and operated a grain elevator at Havelock and was engaged in buying grain and reselling the same at terminal markets. In July, 1920, the Exchange entered into a contract in writing with the defendant company, whereby in consideration of the company making certain advances in money from time to time, the Exchange was to ship at least eighty per cent of the grain received by it to the Company, which agreed to sell the same, and after deducting its commissions and other charges for freight, handling, etc. to credit the proceeds upon the account, if any, owing to it by the Exchange for advances thus made. During the fall of 1920 and thereafter the Exchange shipped all of its grain to the company and the company handled and sold the same under the terms of the sales contract. The method followed was that if the Exchange needed money it drew

sight drafts upon the company the amounts of which when paid were charged to the account of the Exchange. The grain was shipped in car lots to the company at Minneapolis, and the bills of lading were sent forward to it. Upon receipt of the bills of lading the company sold the grain thus consigned and endorsed the bills of lading to the buyer. After deducting the freight and handling charges and its commissions, it credited the proceeds on the account of the Exchange. At the time that this contract was entered into in July 1920, the Exchange was owing several thousand dollars to the company on account of its previous business transactions. During the succeeding months further advances were made by the company so that when on October 11th, the first shipment of grain was made to and received by the company, the Exchange owed. nearly $16,000 on account.

In the fall of 1920 the plaintiff deposited in the elevator of the Exchange for storage 1734 bushels 20 pounds of wheat. The usual storage receipts or tickets for this wheat were issued to him. In the spring of 1920 the plaintiff had furnished one Stenwick, 160 bushels of seed wheat at the agreed price of $3.16 per bushel. He filed a lien for this seed. Stenwick raised a crop from it and sold it to the Exchange. From August to December 1920, one Bean was the manager of the Exchange. Bean was discharged in December 1920. After Bean was discharged, Rafferty, president of the Exchange, acted as manager from that time and until it ceased to do business. During the fall of 1920 the Exchange received either by purchase or for storage about 40,000 bushels of wheat. A large amount of this was received for storage, and the usual storage tickets were issued. Some of these were later redeemed. During the latter part of 1920 the Exchange met with financial difficulties and was unable to meet the demands of the holders of the storage tickets. Checks that it issued were dishonored. After Rafferty became manager and during the winter and spring of 1921, the Exchange made an effort to reduce its storage liability by giving its promissory notes to ticket holders. By this means the liability was reduced several thousand bushels. The holders of these notes, however, received them conditionally, and the condition was never performed. This was denied by Rafferty and others in authority,. but the jury found to the contrary. In May 1921, a meeting of the stockholders and some of the ticket holders was held

for the purpose of considering the condition of the Exchange and devising some means to re-establish it financially. At this meeting it was proposed that the Exchange should give its notes to such ticket holders as would accept them for their storage tickets, and such of the non-stockholders as would take notes for their storage tickets should each be given a share of the capital stock of the Exchange as an inducement to enter into this arrangement. Some of those present at the meeting signed an agreement in accordance with this proposal. Committees were appointed to solicit holders of storage tickets to take notes therefor, and through and by means of these committees the storage liability was reduced to about 3,200 bushels. However, this arrangement was tentative only and was entered into only on condition that it should not be final and binding unless all the ticket holders agreed thereto. All the ticket holders, however, did not enter into the arrangement and the condition thus was never performed and the arrangement never became effective. Among those solicited by the committees to take notes for their storage tickets was the plaintiff. He was given a note for $2,007.25, the value of the grain stored by him at the price then prevailing. The elevator was not opened in the fall of 1921 and did no business. In January 1922, the Exchange was adjudged a bankrupt. The note given to the plaintiff for his tickets was kept by him until after the adjudication in bankruptcy, when it was mailed to the Exchange. It was listed by the Exchange in the bankruptcy proceedings as one of its liabilities.

The meeting of the ticket holders and stockholders in May 1921, was so held after conference by Rafferty with the defendant company. In June Rafferty wrote the company that the Exchange had purchased tickets representing 11,000 bushels of grain, leaving tickets for a little over 3,000 bushels outstanding, and that these were held by banks and business men who had promised not to force collection. At this time there were 4,000 bushels of wheat and certain other grain in the elevator. In July 1921, Rafferty made a statement to the company showing that at that time there was only 3,210 bushels of grain unsettled for. After that the Exchange shipped some of the wheat to the company, which sold the same and credited the proceeds thereof on the Exchange's account. In June and July, 1922, the plaintiff served on the defendant company a demand for the grain

claimed by him, both on account of his storage tickets and under his seed lien claim. When the Exchange was adjudicated a bankrupt there was 1,700 bushels of wheat in the elevator which was appropriated by the trustee. At that time there were outstanding unredeemed wheat storage tickets aggregating 15,658 bushels and rye tickets for 118 bushels. The Exchange was bonded as a warehouseman in the sum of $5,000 pursuant to the statute. The plaintiff and other ticket holders brought suit to realize on the bond. The bonding company defended as against this suit, but subsequently admitted its liability on the bond, and the amount thereof was paid into court pursuant to an order of the court, and is there for such distribution among the ticket holders as may be proper.

The plaintiff in this action sought to recover on account of the conversion by the defendant of the grain to which the plaintiff was entitled under the storage tickets issued to him, and of the grain on which he claimed the seed lien to the amount of such lien claim. The cause came to trial in February 1923. The jury returned a special verdict, consisting of sixty-three findings. These findings were consistent with the plaintiff's contentions. Thereafter both sides moved for judgment on the special verdict as thus returned, and judgment was ordered and entered in favor of the plaintiff, and against the McCaull-Dinsmore Company for the sum of $3,145.94 and costs. From this judgment the defendant brings this appeal.

The defendant contends that the judgment is erroneous and should be set aside for the reasons; (1) that the evidence is insufficient to show that there was a conversion of the grain in question; (2) that there was error on the part of the trial court in admitting or excluding evidence during the course of the trial; (3) that there was error in the court's instructions to the jury; (4) that there was error by reason of the failure to take into account the 1,700 bushels which were in possession of the Exchange at the time it became insolvent and bankrupt; (5) that there was error in that no consideration was taken of the sum of $5,000, proceeds of the indemnity bond deposited in court for distribution among ticket holders.

At the close of the plaintiff's case and again at the close of the whole case the defendant moved for a directed verdict on the ground that the evidence was insufficient to establish a conversion of the grain

or its value if converted. It is undisputed that all that was done by the defendant company with reference to the grain was done under and in accordance with the terms of the contract entered into with it by the Exchange and to which we have heretofore referred. The defendant contends that it acted in good faith merely as a commission agent for the Exchange without notice that the grain sold was held on storage or that there were liens thereon; that there was no negligence on its part in so acting and that, therefore, there can be no liability on account of what was done. The defendant in support of this contention relies upon the case of Nieter v. McCaull-Dinsmore Co. 159 Minn. 395, 199 N. W. 85. Without expressing an opinion as to the rule therein adhered to other than that it seems to be contrary to the generally accepted rule in that behalf (see notes in 50 L.R.A. 646, and 24 Am. St. Rep. 811; Mechem, Agency, § 1457 and cases cited; 38 Cyc. p. 2056 and cases cited; 31 Cyc. p. 1561 and cases cited) it is sufficient here to remark that the jury by their special verdict expressly found that the defendant company had knowledge that the grain that was thus shipped to them was stored grain. We think that the evidence in the case was sufficient to warrant the jury in making this finding. Furthermore, the defendant was more than a commission merchant. It had made very large advances to the Exchange and at all times during the fall of 1920 and thereafter the Exchange was largely indebted to it. Whatever sales of grain were made by the defendant were made for its benefit, as is evidenced by the fact that the net proceeds of such sales were appropriated by it. It is true that whatever was thus received by the defendant was credited to the account of the Exchange, but the Exchange being thus indebted to it, the whole benefit of the sale went to the defendant.

The defendant further contends that in any event the plaintiff is estopped to recover on account of the sales of the grain in question, for the reason that the plaintiff was a stockholder in the Exchange and conversant with the manner in which its business was carried on. Further, that the jury, by its special verdict, found that the plaintiff knew that the grain stored by him with the Exchange would be commingled with other grain and shipped out of the state. Even so, such knowledge would not in itself operate to work an estoppel. See Kastner v. Andrews, 49 N. D. 1059, 194 N. W. 824. That the plaintiff

had such knowledge was a circumstance to be taken into consideration in determining whether he had authorized, consented to, or ratified a sale. Nicter v. McCaull-Dinsmore Co. supra. But here the jury found that the plaintiff never authorized the Exchange to sell or dispose of his stored grain, and never consented to or ratified the sale or disposal of the same. It is unnecessary to comment upon the evidence other than to say that it is sufficient to sustain the jury's findings in this respect.

The defendant also urges that the plaintiff is estopped to recover as against the defendant because he received the note of the Exchange in satisfaction of his claim on account of storage. It is true it appears that the officers of the Exchange delivered to the plaintiff a note equal in amount to the value of the stored grain at the time the note was delivered and for the purpose of satisfying his claim on account of the grain. But it is also true that the plaintiff contended that this note was delivered to him conditionally, the condition being that the arrangement proposed was not to be effective unless all of the holders of the storage tickets acceded thereto; that all did not enter into the arrangement, and that, therefore, it never became effective, and subsequently the note was returned to the Exchange. The jury by its findings sustained the contention of the plaintiff that there was no acceptance of the note delivered to him and that he never ratified or approved of the sale of his grain. It must also be borne in mind that the defendant had disposed of the grain in question long prior to the time that this tentative arrangement was entered into, and that the arrangement was attempted after conference with and at the suggestion of the officers of the defendant.

The defendant further contends that there is no competent evidence in the record to sustain the finding of the jury as to the value of the grain at the time of the alleged conversions. The plaintiff called one Bope as a witness for the purpose of establishing value. Bope was a grain buyer at Mott, North Dakota. He had been in the business for years as a buyer for one of the large grain concerns. He testified both as to the value of the grain at the local market and also at Minneapolis. He admitted that he had no personal knowledge of the market at Minneapolis. His testimony was based upon his knowledge of the grain business generally, and upon information received

by him through telegraphic reports and bulletin cards sent out by the Minneapolis Chamber of Commerce and the Grain Bulletin Association. His testimony was that prices at the many primary markets were fixed and determined by means of information thus received; that the prices at the primary markets were fixed by the prices at the terminal markets less the freight and handling charges. Bope's testimony was objected to as being hearsay and incompetent. We think that the foundation as thus laid was sufficient to admit the testimony of the witness. See chap. 330, Sess. Laws 1923; Farmers' State Bank v. Jeske, 50 N. D. 813, 197 N. W. 854. It is to be noted too that the defendant, though engaged in the business of selling grain on the Minneapolis market, and necessarily fully conversant with the system of marketing there and the means whereby prices were fixed in the primary markets as well as with the prices current both at the primary and the terminal markets, made no effort to refute any of the testimony elicited from the witness Bope but was content to rest upon the objections interposed when that testimony was offered.

The defendant further contends that the evidence is insufficient to sustain the verdict insofar as it concerns the claim for damages for the sale of the wheat on which plaintiff claimed a seed lien. In that regard its contention is, first, that there was no proper and sufficient lien statement as required by § 6852, Comp. Laws, 1913 in that the statement filed by the plaintiff and on which the lien claim is predicated did not sufficiently show the description of the land for which the seed was furnished and upon which the grain was grown. The statement in question described the land as the north half ($N.\frac{1}{2}$) of section eleven (11) in Tepee Butte Township, Hettinger County, North Dakota. The argument is that the description is insufficient because the statement does not set out the township and range according to government survey. This court has several times held that a seed lien is wholly statutory in its nature and origin and, hence, can not be acquired or enforced unless there is substantial compliance with the statute, and that one of the statutory requisites is a certain description of the land whereon the crop liened is to be grown. See Lavin v. Bradley, 1 N. D. 291, 47 N. W. 384; Parker v. Bank, 3 N. D. 87, 54 N. W. 313; Chaffee v. Edinger, 29 N. D. 537, 151 N. W. 223. But in this particular case it appears that Tepee Butte

Township is an organized civil township in Hettinger county comprising township 134, range 96, according to the government survey and designation. That being the case, it is plain that the description of the land affected, as set out and contained in the lien statement, was sufficiently definite and certain to apprise anyone as to the premises intended to be covered by the seed lien. Notice that the land lay in Tepee Butte Township, was notice that it was in township 134, range 96, if such notice were necessary. There is, therefore, no basis for the defendant's contention in this respect.

The defendant further contends with reference to the lien claim that there was no sufficient evidence to justify the finding of the jury that the crop liened, or a portion of it, was delivered to and received by the Exchange. We think, however, that the evidence is ample in that respect. The thresherman who threshed the grain testified as to the number of bushels of grain threshed. An employee of Stenwick, who helped haul the grain to the Exchange, testified to that fact and to the fact that Stenwick himself also hauled a portion thereof to the Exchange. The check issued by the Exchange to Stenwick for wheat of like kind and quality is in evidence, and it appears that Stenwick had no other crop during the season of 1920 than that grown upon the premises described in the lien statement.

We think, therefore, that the motion for a directed verdict made at the close of the plaintiff's case and again at the close of the whole case was properly denied. The weight of the evidence and the credibility of the witnesses were for the jury. With those questions we have no concern. The evidence is amply sufficient to sustain the findings as made.

The defendant has assigned numerous errors on account of rulings in the admission or rejection of evidence offered. It complains, first, on account of the rulings of the court in permitting the plaintiff to call and examine the witness McNaughton as an adverse witness under the statute. The statute (Comp. Laws, 1913, § 7870) provides that, "the directors, officers, superintendent or managing agents of any corporation which is a party to the record in an action or proceeding may be examined upon the trial thereof as if under cross-examination at the instance of the adverse party." The witness McNaughton was called by the plaintiff under this statute, the plaintiff asserting that

he was a managing agent of the defendant. The defendant was a corporation. Its head office was in Minneapolis, and it had branch offices in various other cities. McNaughton was not a director or an officer of the corporation, but had charge and supervision of the Minneapolis office. He had control and custody of the books and attended generally to the correspondence of the office. While he did not declare the policy of the defendant or determine what the general run of the business should be, he saw to it that the business affairs of the company were, as he says, "run according to the policy after the policy had been adopted." The cross examination here conducted was as to matters evidenced by the books and records in the department under the control and direction of the witness. Unquestionably, McNaughton was a managing agent of the company within the meaning of the term as used in the statute, and there was no error on the part of the trial court in requiring him to submit to cross-examination under the provisions of § 7870, supra.

The defendant urges error because certain of the witnesses called by the plaintiff were permitted to testify as to what was said and done at the meeting of the stockholders held in May 1921, for the purpose of considering the financial difficulties of the Exchange and of adjusting the same. At that meeting the shareholders and ticket holders present were told of the proposed adjustment and were advised as to the contents of a certain letter which had been written by the defendant to Rafferty, the president of the Exchange, relative to the situation. When witnesses were called by the plaintiff to testify as to what was said and done at this meeting, objection was made to such testimony, as incompetent, irrelevant and immaterial on various accounts, which objections were overruled. We think that the testimony was admissible for the reason that the defendant had raised the issue of estoppel on account of what had been done in the way of redeeming the storage tickets by means of notes. The testimony was offered and received for the purpose of showing exactly what had taken place with reference to the alleged settlement and adjustment. There was no error in its admission.

The defendant further complains on account of the admission over its objection of certain correspondence between the attorneys for the plaintiff and defendant company. These exhibits were offered and

received for the purpose only of showing the demand for the grain and the refusal on the part of the company. They were admissible for such purpose. Various other errors were specified but we do not deem them of sufficient importance to warrant us in commenting upon them.

The defendant predicates error on account of certain of the court's instructions to the jury. The cause was submitted to the jury for a special verdict. This was agreeable to all parties. Some sixty-three questions were submitted to and answered by the jury. No general instruction was given, but the court did instruct as to where the burden of proof lay with reference to certain of the questions submitted. The defendant complains that the court erred in not instructing as to the proper measure of damages. It is a sufficient answer to this complaint to say that the court, in the instructions complained of, simply advised the jury where the burden of proof rested with reference to certain specific facts which were to be found by them. There was neither intent nor attempt on the part of the court to advise as to any measure of damages and it would have been manifestly improper for the court to so instruct. A special verdict is that by which the jury finds the facts only, leaving the judgment to the court, § 7632, Comp. Laws, 1913; Morrison v. Lee, 13 N. D. 591, 102 N. W. 223; and the instructions complained of were framed in accordance with that rule. The defendant further complains that the effect of the instructions as given was to advise the jury as to the ultimate result and legal effect of the various findings to be made by them. If such were the effect of the instructions complained of, there would doubtless be error. See Morrison v. Lee, supra. We have, however, carefully examined the instructions and we are of the opinion that it can not reasonably be said that they are open to the objection made.

For the reasons as above expressed we hold that there is no prejudicial error in the record and that the special verdict as returned by the jury must stand. Further, the verdict as returned, is sufficient to warrant the entry of a judgment thereon in favor of the plaintiff.

There remain for consideration, however, the points made by the defendant on account of the findings of the jury that there was in the elevator of the Exchange, at the time it was adjudicated a bankrupt, 1700 bushels of wheat which were appropriated by the trustee,

and that the Exchange was bonded as a warehouseman in the sum of $5,000 and the surety on this bond had admitted liability thereunder and paid the amount thereof into court for the use and benefit of the holders of storage tickets. The judgment, as entered on the order of the trial court, took no consideration either of the wheat on hand at the time of the adjudication in bankruptcy, or of the proceeds of the warehouseman's bond. In this respect, we think that the court erred and that the points made on this account by the defendants are well taken.

The rights of storage ticket holders were considered by this court in the cases of Kastner v. Andrews, 49 N. D. 1059, 194 N. W. 824, and Carson State Bank v. Grant Grain Co. 50 N. D. 588, 197 N. W. 146. We held in the latter case that, "the interest of each ticket holder attaches proportionately to the extent that is required to redeem all outstanding tickets to all the grain of kind and quality described in his receipt that may at any time, subsequent to its issuance, be received on account of purchase or general storage into the warehouse, and this even though at some intervening moment there may be no grain whatever therein. Thus it necessarily follows that, whenever subsequent to the issuance of a storage ticket to a bailor of grain, the warehouseman sells from the mass in which such bailor has an interest in common, such an amount as to reduce the mass to less than that required to redeem the storage ticket outstanding at the time of such sale, there is a conversion, and there may be as many conversions as there are sales of grain that deplete the common mass, original or replenished, below the quantity required to redeem the storage tickets then outstanding." Applying the rule thus laid down to the instant case, holders of the outstanding storage tickets of the Exchange at the time of its adjudication as a bankrupt, were the owners in common of the 1700 bushels of grain then in the elevator. If any of the grain required to redeem the storage tickets had been wrongfully sold, there was a conversion, and the seller and the purchaser thereof were both liable therefor. But the difference between the amount on hand and the amount required to redeem measured the extent of their liability on account of the conversion, and subsequently when the common mass was replenished, such difference and such liability were diminished to that extent. Therefore, the plaintiff was an owner in common

with the other wheat storage ticket holders of the 1700 bushels. His interest therein was as the amount of wheat stored by him, 1734 bushels, was to the whole wheat storage liability of the Exchange, 15,658 bushels, or approximately 188 bushels, and the plaintiff's judgment must be reduced to that extent.

It is impossible from the record before us to ascertain the method adopted by the trial court in reckoning the amount of the judgment on account of the conversions by the defendant. The special verdict of the jury determined the whole number of bushels of wheat to which the plaintiff was entitled under his storage tickets to be the amount as claimed by him, to wit: 1734 bushels and 20 pounds, and that its value at Minneapolis at the date of the demand therefor and refusal was $1.36 per bushel for the No. 3 wheat, and $1.25 per bushel for the No. 4 wheat. Of the wheat converted, it appears that 459 bushels and 20 pounds was No. 4 wheat and the remainder, 1275 bushels, was No. 3 wheat. The jury found that the freight charge from Havelock, North Dakota to Minneapolis was 16.8 cents per bushel. The plaintiff recovering as for a conversion of the wheat was entitled to recover that which would make him whole for the loss and injury suffered by him by reason of such conversion. See § 7168, Comp. Laws, 1913; Lovejoy v. Merchants' State Bank, 5 N. D. 623, 67 N. W. 956; Citizens Nat. Bank v. Osborne-McMillan Elevator Co. 21 N. D. 335, 131 N. W. 266; Rolette State Bank v. Minnekota Elevator Co. 50 N. D. 141, 195 N. W. 6. Under the storage contract the plaintiff was liable for the storage charges therefor at the contract rate, and in case the wheat was delivered at Minneapolis, for freight and handling charges. By the conversion then, he suffered injury to be measured by the value of the wheat less such charges, and he is made whole by the recovery of that amount with interest thereon from the date of the conversion. The storage charges, reckoned according to the terms of the storage contract to date of conversion, amounted to 13 cents per bushel. This, plus the freight charge of 16.8 cents per bushel, made the whole charge, 29.8 cents per bushel. The plaintiff's recovery then, must be for 459 bushels of No. 4 wheat at $1.25 per bushel, less charges of 29.8 cents, or $.952 per bushel, and for the 1087 bushels of No. 3 wheat, being the whole amount of No. 3 wheat stored less 188 bushels, the extent of the plaintiff's interest in the 1700 bushels

52 N. D.—47.

remaining in the elevator at the time of the adjudication in bankruptcy, at $1.36 per bushel, less 29.8 cents charges to be deducted, or $1.062 per bushel, with interest on the whole amount thus computed at the rate of six per cent per annum from the date of demand and refusal on June 1st, 1922, to the date of the verdict. The plaintiff was therefore entitled to recover on account of conversion of the stored wheat, the sum of $1,662.91.

With reference to the conversion claimed on account of the Stenwick wheat, we think that it is unnecessary to make any detailed statement as to computations. The jury found that the amount of such wheat converted was 508 bushels. They further found that the extent of the lien claim was $505.60, and interest from April 24, 1920, or $571.32 at the date of the demand on the defendant. Reckoned in any manner justified by the findings and undisputed evidence, the value of the wheat converted was more than sufficient to cover the lien claim. Plaintiff was therefore entitled to judgment on the verdict in the sum of $2,257.08 less credits to be made for reasons as hereinafter stated.

The defendant complains because the court in ordering judgment took no account of the proceeds of the warehouseman's bond theretofore paid into court and awaiting distribution as to the various ticket holders. The instant case was begun in July 1922. At about the same time, the plaintiff and other named ticket holders began an action in the name of the State and on behalf of all of the ticket holders to recover on the warehouseman's bond. See Phillips v. Semingson, 25 N. D. 460, 142 N. W. 47; Ertelt v. Lillethun, 27 N. D. 226, 145 N. W. 825. An answer was interposed to the complaint in that action. Thereafter and in September 1922, the surety, the defendant in that action, having confessed liability on the bond was ordered to pay the amount thereof into court for proper distribution, and the order being complied with, the action was dismissed as to the surety. Issue in the instant case was joined in October 1922. Trial was had in February 1923, and judgment ordered and entered in March thereafter. Thus it appears that long prior to the entry of judgment in the instant case, the plaintiff had realized upon his claim against the surety. True no judgment had been entered, but through the action thus begun collection had been made upon the bond and the proceeds thereof

were in the hands of the court for distribution. The record does not disclose whether any distribution of the same had been made, but as we view it, that fact is immaterial. The plaintiff had a right to recourse against either or both the surety and the defendant through whose conversion the default had been occasioned. Kastner v. Andrews, 49 N. D. 1059, 194 N. W. 824. Having exercised his right and realized a part of his claim on account thereof from the one, plaintiff was not in a position to exact the whole amount of his original claim from the other. We are, therefore, of the opinion that the district court erred in not taking into consideration the amount theretofore recovered by the plaintiff on account of the warehouseman's bond. The judgment in the instant case must be reduced in the amount realized by the plaintiff from such bond. The record is such that it is impossible for this court to determine that amount and make the reduction. However, we do not think it necessary that the judgment as entered be reversed and a new trial had. The reduction can be made by the trial court without the trouble and expense incident to a new trial of the case. The judgment as entered will therefore be modified as heretofore indicated and as thus modified will be affirmed. Execution thereon will be stayed until such time as the district court of Hettinger county shall have ascertained and determined the rights of the respective ticket holders in the proceeds of the warehouseman's bond now in that court, and when such rights are determined, the amount recovered by the plaintiff in that action will be credited on the judgment in the instant case. It is so ordered.

CHRISTIANSON, Ch. J., and BIRDZELL, JOHNSON, and BURKE, JJ., concur.