Natonia JOHNSON, Plaintiff,

v.

HUBBARD BROADCASTING, INC., Defendant,

Equal Employment Opportunity Commission, Amicus Curiae.

Civil No. 4–96–107.

United States District Court, D. Minnesota, Fourth Division.

Sept. 3, 1996.

---

1448

John A. Fabian, III, of Nichols, Kaster & Anderson, Minneapolis, MN, for Plaintiff.

Gregory J. Stenmoe, of Briggs and Morgan, Minneapolis, MN, for Defendant.

Robert J. Gregory, of the Equal Employment Opportunity Commission, Office of the General Counsel, Washington, DC, for the Equal Employment Opportunity Commission, as Amicus Curiae.

## ORDER

MONTGOMERY, District Judge.

Based upon the Recommendation by United States Magistrate Judge Jonathan Lebedoff dated July 29, 1996, and all the files and records herein, and no objections having been filed to said Recommendation,

IT IS HEREBY ORDERED that Defendant Hubbard Broadcasting Inc.'s Motion to Compel Arbitration and Stay Proceedings is GRANTED and this case shall be STAYED pending the outcome of the arbitration; the Court shall retain jurisdiction over this matter.

## REPORT AND RECOMMENDATION AND ORDER

LEBEDOFF, United States Magistrate Judge.

This matter came on for hearing before the undersigned Magistrate Judge of District Court on April 23, 1996, on Defendant Hubbard Broadcasting, Inc.'s ("HBI") motion for an Order to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 United States Code §§ 3 and 4 (1994), and the Minnesota Uniform Arbitration Act ("MUAA"), Minn.Stat. § 572.09 (1994). On May 17, 1996, the Equal Employment Opportunity Commission ("EEOC") requested leave to participate in this matter as *amicus curiae.*

The Court has jurisdiction to issue a Report and Recommendation and Order pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

The Court now grants the EEOC's motion for leave to participate in this matter as *amicus curiae.* Furthermore, for the reasons discussed below, the Court recommends that HBI's motion to compel arbitration and stay proceedings be granted.

## I. BACKGROUND

According to the Complaint, Plaintiff Natonia Johnson ("Johnson"), an African–American woman, began work as an Associate Producer for KSTP Television ("KSTP"), a division of HBI, approximately five months after she graduated with honors from Howard University in Washington, D.C. *See* Complaint, Docket No. 1, at ¶¶ 7–9. Before joining HBI, Johnson gained experience in the field of broadcast journalism by serving as an intern at various radio and television stations within the industry. *Id.*, at ¶ 10. When HBI hired Johnson on September 28, 1994, the company presented her with a one-page Agreement of Hire ("Agreement") which she subsequently signed. *See* Exhibit A to Affidavit of Margaret J. Batemen, Docket No. 7.

The last paragraph of the Agreement, located directly above Johnson's signature, provides in relevant part that:

In further consideration of my employment, I agree that[,] to the extent permitted by law, all claims and disputes between the company and myself arising out of federal, state, or local statutes or ordinances shall be decided by arbitration in accordance with the rules of the American Arbitration Association currently in effect unless the parties, in writing, mutually agree otherwise.

Exhibit A to the Affidavit of Margaret J. Batemen.

Furthermore, the arbitration agreement purports to cover "all disputes governed by the Employment Retirement Income Security Act, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and all state and local anti-discrimination laws and ordinances." *Id.* In addition, the arbitration agreement imposes the following conditions upon the arbitration process:

Notice of the demand for arbitration shall be filed in writing with the other party to this agreement and with the American Arbitration Association and shall be made within 180 days after the dispute has arisen. To the extent permitted by law, any award shall be limited solely to the claimant's out-of-pocket damages. Regardless of the award, each party shall be responsible for that party's own fees for arbitration. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with the applicable law in the court having jurisdiction thereof. The agreement herein among the parties to this agreement to arbitrate shall be specifically enforceable under applicable law in any court having jurisdiction thereof. *Id.*

In the face of this express agreement, Johnson commenced the present action in the United States District Court for the District of Minnesota on February 1, 1996. *See* Complaint, Docket No. 1. In her Complaint, Johnson asserts claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (1994), 42 U.S.C. § 1981 (1994), and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.01 *et seq.* (1994 and Supp. 1996). Complaint, at ¶¶ 22–44. Specifically, Johnson alleges that HBI, through its employees, not only harassed and discriminated against her on the basis of her race, but also engaged in a pattern of retaliatory conduct, and ultimately discharged her when she tried to bring the problem to the attention of her superiors. Complaint, at ¶¶ 13–21.

Instead of filing an answer, HBI moves for an Order to compel arbitration and to stay proceedings, pursuant to the FAA and the MUAA. In support of its motion, HBI argues that "the parties entered into and executed an express written agreement to arbitrate" which "covers all claims stated in the Complaint" and is therefore "binding according to its terms under applicable law." *See* Defendant's Memorandum in Support of its Amended Motion to Compel Arbitration and Stay Proceedings ("Memorandum in Support of Motion to Compel"), Docket No. 6, at 1.

In opposition to HBI's motion, Johnson avers that she neither knowingly nor voluntarily entered into the arbitration agreement. In particular, Johnson represents that HBI never explained any of the provisions of the Agreement to her, especially the one discussing arbitration. *See* Plaintiff's Memorandum in Support of its Motion in

Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings ("Memorandum in Opposition"), Docket No. 8, at 1. *See also* Affidavit of Natonia Johnson, Docket No. 9, at ¶¶ 2–4. Moreover, Johnson claims that HBI never advised her of the importance of reading and understanding all of the provisions of the Agreement or asked her if she had, in fact, read and understood those provisions. *Id.* Consequently, Johnson argues, HBI's failure to explain the provisions of the Agreement, when coupled with the superior bargaining power which it exercised as an employer within the marketplace, amounts to the use of overwhelming economic power by the company and thus serves to invalidate the arbitration agreement. Plaintiff's Memorandum in Opposition, at 4–5. In the alternative, Johnson claims that insufficient consideration supports the Agreement, rendering it invalid. *Id.*, at 5–6.

Also, Johnson contends that the terms of the arbitration provision amount to an effective waiver of her statutory rights and remedies under Title VII, 42 U.S.C. § 1981, and the MHRA. *Id.*, at 2–3. Specifically, Johnson claims that the terms of the arbitration agreement:

1. require her to file a written demand for arbitration "within 180 days after [her] dispute has arisen" and thus severely diminish the statutes of limitations provided under Title VII, 42 U.S.C. § 1981, and the MHRA;

2. limit her award solely to "out-of-pocket damages" and thus deny her the far-reaching remedial rights afforded by Title VII, 42 U.S.C. § 1981, and the MHRA; and

3. obligate her to pay the fees which she incurs during arbitration and thus prevent her statutory right to recover attorneys' fees and costs in the event that she prevails on any or all of her claims.

Plaintiff's Memorandum in Opposition, at 2–3.

In response to these arguments, HBI argues that, in the absence of fraud, duress, or coercion, mere inequality of bargaining power between contracting parties will not suffice to invalidate an agreement. Defendant's Reply Brief, Docket No. 10, at 4–6. More-over, HBI claims that since it presented Johnson with the Agreement before she began work at KSTP, adequate consideration supports the Agreement. *Id.*, at 6–7. Finally, HBI contends that, under applicable law, the mere limitation of remedial measures in an arbitration agreement does not constitute a waiver of substantive statutory rights and that the limitations imposed by the arbitration agreement fail to invalidate the Agreement either in whole or in part. *Id.*, at 2–3.

On May 17, 1996, the EEOC requested leave to file a brief as *amicus curiae* in this matter. This motion is granted. Echoing several of Johnson's concerns, the EEOC claims that enforcing the arbitration provision would severely diminish, if not outright abrogate, many of Johnson's statutory rights. EEOC's Brief as *Amicus Curiae* in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings ("*Amicus Brief*"), Docket No. 15, at 4. In particular, the EEOC expresses concern with two provisions of the arbitration agreement. First, the EEOC notes that the provision requiring Johnson to assert her claim "within 180 days after [her] dispute has arisen" significantly and, perhaps, impermissibly impedes Johnson's ability to file a timely complaint in this matter. *Id.*, at 7–8. Secondly, the EEOC contends that the provision limiting Johnson's recovery solely to out-of-pocket expenses prevents her from securing a series of statutory remedies—namely, back pay, compensatory and punitive damages, and attorney's fees. *Id.*, at 7. Taken together, the EEOC argues, these provisions bind Johnson to a prospective waiver of her statutory rights which, by definition, is neither knowing nor voluntary. *Id.*, at 8. The EEOC submits that, by preventing Johnson from fully and effectively vindicating her statutory rights, the terms of the arbitration agreement run counter to federal policy and thus serve to invalidate the agreement. *Id.*, at 8–10.

However, HBI contends that established case law requires the Court to compel arbitration. Defendant's Reply to the *Amicus Brief* of the EEOC ("Reply to the *Amicus Brief*"), Docket No. 18, at 2–4. Moreover, HBI asserts that both the FAA and the 1991

Civil Rights Act favor the arbitration of this dispute. *Id.*, at 4–7. More importantly, in response to the primary concerns of both Johnson and the EEOC, HBI argues that, while the arbitration agreement may deny Johnson the full array of remedies available in a court of law, the mere limitation of remedies does not necessarily invalidate the arbitration agreement. *Id.*, at 7. Specifically, HBI reminds the Court that parties to a written arbitration agreement may structure their contractual relationship as they see fit. *Id.*, at 8. Therefore, as long as Johnson can effectively vindicate her statutory cause of action in the arbitral forum, she retains her substantive statutory rights, while Title VII, 42 U.S.C. § 1981, and the MHRA continue to serve both their remedial and deterrent functions. *Id.*, at 7–9. Finally, HBI contends that the provision requiring Johnson to assert her claim "within 180 days after [her] dispute has arisen" does not serve as a jurisdictional bar to arbitration since the arbitrator determines, at the outset, whether Johnson brought her claim in a timely manner. *Id.*, at 10.

On June 26, 1996, in response to one of the issues raised by HBI in its reply to the EEOC's *Amicus* Brief, the Court sent a letter to counsel for HBI, with copies to counsel for Johnson and the EEOC, inquiring whether and, if so, to what extent the language of the arbitration agreement limits the statutory remedies available to Johnson under Title VII. On July 3, 1996, counsel for HBI responded to the inquiry by asserting that, since the question of remedies follows the question of liability, any consideration of remedies is, at best, premature. *See* July 3, 1996, Letter of Gregory J. Stenmoe, Docket No. 20, at 1. Furthermore, according to defense counsel, under established law, the arbitrator, and not Defendant or the Court, determines the extent to which the language of the arbitration agreement limits Johnson's remedies under Title VII. *Id.* Defense counsel also clarified the meaning of "out-of-pocket damages" in his letter by stating that the term includes economic damages, such as back pay and lost employment benefits, but excludes punitive damages and any other form of non-pecuniary loss, such as pain and suffering, inconvenience, mental anguish, and loss of enjoyment or quality of life. *Id.* at 2.

On July 18, 1996, the Court sent a letter to counsel for Johnson, with copies to counsel for HBI and the EEOC, asking whether Johnson had pursued any action through either the EEOC or a state or local agency prior to initiating her lawsuit. On July 19, 1996, counsel for Johnson replied that Johnson filed simultaneous charges with the Minnesota Department of Human Rights and the EEOC on November 21, 1995, and that the EEOC issued Johnson a Right to Sue letter on November 29, 1995. July 19, 1996, Letter of John A. Fabian, Docket No. 21, at 1.

## II. ANALYSIS

■ HBI seeks to compel arbitration under both state law, Minn.Stat. § 572.09 (1994), and federal law, 9 U.S.C. §§ 3 and 4 (1994). However, federal law determines the appropriate forum for the resolution of a federal claim. *See Shearson/American Express v. McMahon*, 482 U.S. 220, 225–27, 107 S.Ct. 2332, 2336–38, 96 L.Ed.2d 185 (1987). While the MHRA expressly prohibits the prospective waiver of statutory rights in this matter, *see* Minn.Stat. § 363.031 (1994), the Minnesota Supreme Court held in *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790 (Minn. 1995), that the FAA pre-empts this state statute. *Johnson*, 530 N.W.2d at 803–04. Accordingly, the Court examines the arbitration agreement under the color of the FAA.

Originally enacted in 1925, the FAA, 43 Stat. 883, was re-enacted and codified in 1947 as Title 9 of the United States Code for the purposes of reversing the "longstanding judicial hostility" to arbitration agreements that American courts had adopted from their English ancestors and placing arbitration agreements on par with other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (citations omitted).

The FAA states in pertinent part that
[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1994).

The FAA also allows a party to stay proceedings in federal district court when it can refer an issue in dispute to arbitration. 9 U.S.C. § 3 (1996). In addition, the FAA enables a party to secure an order "compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement[.]" *See* 9 U.S.C. § 4 (1996). *See also Gilmer,* 500 U.S. at 25, 111 S.Ct. at 1651. Taken together, these provisions evince a strong federal preference toward enforcing arbitration agreements. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). *See also Gilmer,* 500 U.S. at 25, 111 S.Ct. at 1651 (citation omitted); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1984) (citation omitted).

In light of this preference, the United States Supreme Court has held that, while not every controversy implicating a statutory right is appropriate for arbitration, arbitration agreements which encompass statutory claims are generally enforceable under the FAA. *See Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650 (compelling the arbitration of claims arising under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*); *Mitsubishi,* 473 U.S. at 636–37 at 105 S.Ct. at 3359 (compelling the arbitration of claims arising under the Sherman Anti–Trust Act, 15 U.S.C. §§ 1–7); *McMahon,* 482 U.S. at 238, 107 S.Ct. at 2343–44 (ordering the arbitration of claims arising under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)); *McMahon,* 482 U.S. at 242, 107 S.Ct. at 2345–46 (ordering the arbitration of claims arising under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484–87, 109 S.Ct. 1917, 1921–23, 104 L.Ed.2d 526 (1989) (compelling arbitration of claims arising under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 771(2)). However, it is important to note that a party neither abandons nor relinquishes its substantive rights when it agrees to arbitrate a claim arising under a federal statute. *See Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354). Consequently, an arbitration agreement serves only as a specialized choice-of-forum provision which identifies the "situs of the suit" and the specific set of procedures governing its resolution. *See Mitsubishi,* 473 U.S. at 630, 105 S.Ct. at 3355 (citing *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2456, 41 L.Ed.2d 270 (1974)). Accordingly, in the absence of an expressed congressional intent to preclude a waiver of judicial remedies for the violation of a statutory right, the Court should hold a party to its promise to arbitrate a statutory claim. *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (citing *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354–55).

With these principles in mind, the Court now addresses HBI's motion to compel arbitration and stay proceedings ("motion to compel").

Arbitration is a matter of contract between the parties. *See First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (citations omitted). *See also AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The Court can therefore only compel the arbitration of a dispute which the parties agreed to arbitrate, *see Steelworkers,* 363 U.S. at 582, 80 S.Ct. at 1353, but must resolve all doubts in favor of arbitration in the face of an explicit arbitration provision. *See AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419 (citing *Steelworkers,* 363 U.S. at 582–83, 80 S.Ct. at 1353). While the Court determines whether the parties agreed to arbitrate a particular dispute, *see AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1419, it cannot rule on the merits of any underlying claims. *Id.*

■ Therefore, in reaching its decision, the Court must first determine whether a valid arbitration agreement exists between the parties, then decide whether this particular dispute falls within the scope of the agreement, and, finally, consider whether legal constraints, independent of the agreement, prevent the arbitration of this dispute or render the arbitration agreement unenforceable as unconscionable. *See Mitsubishi,* 473 U.S. at 626–27, 105 S.Ct. at 3353–54. However, the Court reminds the parties that, given its limited role in this analysis, it cannot exercise its discretion and examine the merits of any underlying claims if it finds that the dispute falls within the scope of a valid arbitration agreement. *See AT & T Technologies,* 475 U.S. at 648–50, 106 S.Ct. at 1418–19.

## A. The Agreement to Arbitrate

■ When two parties agree to resolve a dispute within an arbitral, as opposed to a judicial, forum the Court should honor and enforce that agreement. *See Mitsubishi,* 473 U.S. at 625–26 and 636–37, 105 S.Ct. at 3353–54 and 3358–59 (citations omitted).

■ Here, Johnson signed a one-page "Agreement of Hire" which expressly and unequivocally obligates her to arbitrate "all claims and disputes between [HBI] and [herself arising out of federal, state, or local statutes or ordinances[.]" While Johnson concedes this fact, *see* Plaintiff's Memorandum in Opposition, at 1, *and* Affidavit of Natonia Johnson, at ¶ 2, she argues that she neither knowingly nor voluntarily agreed to arbitrate her dispute. Plaintiff's Memorandum in Opposition, at 4. She therefore asks the Court to invalidate the arbitration agreement.

The Court finds this line of reasoning unpersuasive. By her own admission, Johnson is an intelligent woman with experience in the field of broadcast journalism. According to her Complaint, she graduated with honors from Howard University. *See* Complaint, at ¶ 9. Furthermore, before joining HBI, she served as an intern at various radio and television stations within the industry. *Id.,* at ¶ 10. Despite this intelligence and experience, Johnson signed the Agreement without

reading it. While Johnson may now regret her decision, the Court cannot ignore it.

■ In its evaluation of the arbitration agreement, the Court must apply ordinary principles of Minnesota contract law. *See First Options,* —— U.S. at ——, 115 S.Ct. at 1924. Under Minnesota law, an unequivocal and positive statement which complies exactly with the requirements of an offer constitutes a valid acceptance. *Minar v. Skoog,* 235 Minn. 262, 50 N.W.2d 300, 302 (1951). Furthermore, in the absence of fraud, mistake, duress, coercion, or unconscionable terms, a literate party who signs a contract, in ignorance of its contents, remains bound by its terms and conditions. *See Gartner v. Eikill,* 319 N.W.2d 397, 398 (Minn.1982); *accord N & D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722, 727 (8th Cir.1976) (citations omitted). A party therefore signs a contract at its own peril. Failing to read or understand the language of a contract serves as no defense under the law. *N & D Fashions, Inc.,* 548 F.2d at 727.

By signing her name in the space which directly followed the words "EMPLOYEE ACCEPTANCE" on the Agreement, Johnson unequivocally and positively expressed an intent to enter into a binding employment agreement with HBI. While Johnson represents that she neither read nor understood the "Additional Terms and Conditions" of the Agreement, her affirmations cannot insulate her from the contractual obligations which she incurred as a result of signing the Agreement. *See Gartner,* 319 N.W.2d at 398. *See also N & D Fashions, Inc.,* 548 F.2d at 727 (citations omitted).

Johnson attempts to avoid this inescapable conclusion by claiming that she unknowingly entered into the arbitration agreement. *See* Plaintiff's Memorandum in Opposition, at 4–5. Specifically, Johnson claims that "HBI did not explain ... any of the Additional Terms and Conditions contained within the Agreement[.]" Affidavit of Natonia Johnson, at ¶ 2. Furthermore, Johnson represents that HBI did not advise her of the importance of reading and understanding the Additional Terms and Conditions of the Agreement, ask her whether she had read and

understood those terms, or recommend that she consult an attorney before signing the Agreement. *Id.,* at ¶ 4.

In essence, Johnson employs a defense which was recently recognized by the United State Court of Appeals for the Ninth Circuit. In *Prudential Insurance Co. v. Lai,* 42 F.3d 1299, 1305 (9th Cir.1994), the Ninth Circuit held that, despite clear congressional support for the arbitration of Title VII claims under section 118 of the Civil Rights Act of 1991, Pub.L. 102–166, a court cannot force a party to abandon its substantive statutory rights under Title VII by compelling arbitration unless the party has "knowingly agreed" to relinquish its statutory remedies in favor of arbitration. *Lai,* 42 F.3d at 1305.

In reaching its decision, the Ninth Circuit noted that, prior to 1991, courts interpreted Title VII as prohibiting any waiver of statutory remedies in favor of arbitration. *Id.* In light of this preference, the Ninth Circuit dismissed the plain language of section 118 of the Civil Rights Act of 1991, Pub.L. 102–166, which expressly provides that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under [Title VII.]" *See Lai,* 42 F.3d at 1304. Instead, the Ninth Circuit relied upon language from one House Report and the remarks of an individual Senator to revise the plain meaning of the statute. *Id.* at 1304-05. In particular, the Ninth Circuit cited language from a House Committee Report which provides that "the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII." *Id.* at 1304 (citing HR Rep. No. 40(I) 102nd Cong. 1st Sess., reprinted in 1991 U.S.C.C.A.N. 549, 635). Furthermore, the Ninth Circuit cited the remarks of Senator Dole to demonstrate that section 118 encourages arbitration only when "the parties knowingly and voluntarily elect to use th[at] method." *Lai,* 42 F.3d at 1305 (citing 137 Cong.Rec.S. 15472, S. 15478 (Daily Ed. October 30, 1991), statement of Senator Dole). Subsequently, the Ninth Circuit concluded that, given the remedial and procedural differences which exist between the arbitral and judicial forums, it could not force a party to forgo its statutory rights unless the party knowingly agreed to submit its dispute to arbitration. *Lai,* 42 F.3d at 1305 (citations omitted).

While the Court, like the Ninth Circuit, recognizes the existence of remedial and procedural differences between the arbitral and judicial forums, it finds the *Lai* Court's logic unconvincing and declines to adopt it in this matter.

First, the *Lai* decision has met with widespread criticism in several Circuits. *See Maye v. Smith Barney, Inc.,* 897 F.Supp. 100, 107 (S.D.N.Y.1995) (criticizing the *Lai* decision as contrary to Supreme Court precedent and noting its citation to inadequate legislative history) (citations omitted). *See also Beauchamp v. Great West Life Assurance Co.,* 918 F.Supp. 1091, 1096-97 (E.D.Mich.1996) (criticizing the reasoning of the *Lai* decision and its use of legislative history). Secondly, the one-page Agreement signed by Johnson differs significantly from the one at issue in the *Lai* decision. *See Lai,* 42 F.3d at 1302–03 (describing the arbitration agreement in detail). Because a party retains it substantive statutory rights when it agrees to arbitrate a dispute, *see Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354, the Court finds the holding of the Ninth Circuit in the *Lai* decision unpersuasive and declines to apply it to this matter.

█ In anticipation of this conclusion, Johnson argues in the alternative that the failure of HBI to explain the provisions of the Agreement, when coupled with the superior bargaining power which it enjoyed as an employer within the marketplace, amounts to the use of overwhelming economic power by HBI and thus serves to invalidate the arbitration agreement as an unenforceable adhesion contract. Plaintiff's Memorandum in Opposition, at 4–5.

█ While there is nothing inherently unfair about an arbitration agreement, *Webb v. R. Rowland & Co., Inc.,* 800 F.2d 803, 807 (8th Cir.1986) (citation omitted), claims purporting the use of unequal bargaining power in contractual relationships are best left for resolution in specific cases. *Gilmer,* 500 U.S.

at 33, 111 S.Ct. at 1656. However, the mere allegation that an arbitration agreement resulted from an inequality of bargaining power simply will not suffice to invalidate the agreement. *Id.* In short, in the absence of a well-founded claim that the arbitration agreement resulted from the exercise of overwhelming economic power which would provide grounds for the revocation of *any* contract, the Court must enforce the arbitration agreement. *Lang v. Burlington Northern Railroad Co.,* 835 F.Supp. 1104, 1106 (D.Minn.1993) (Rosenbaum, J.) (citations omitted). *See also Mitsubishi,* 473 U.S. at 627, 105 S.Ct. at 3354; 9 U.S.C. § 2.

■ Under this standard, Johnson fails to meet her burden. Although HBI, as an employer, may exercise a certain degree of superior bargaining power within the marketplace, *see Sanborn Manufacturing Co. v. Currie,* 500 N.W.2d 161, 164 (Minn.Ct.App. 1993) (stating that "employers and employees have unequal bargaining power"), its actions simply fail to amount to the use of overwhelming economic power necessary to invalidate the Agreement. According to Johnson, HBI never explained the provisions of the one-page Agreement to her. Johnson admits, however, that she never asked for an explanation. *See* Affidavit of Natonia Johnson, at ¶¶ 2–4. Furthermore, under Minnesota law, Johnson cannot employ the defense of "economic duress" in this matter. *See St. Louis Park Inv. Co. v. R.L. Johnson Inv. Co.,* 411 N.W.2d 288, 291 (Minn.Ct.App.1987). While the Minnesota Court of Appeals defines "economic duress" as any wrongful or unlawful conduct which exerts severe financial pressure on a party, compelling it to execute an agreement against its will and to its economic detriment without any immediate legal remedy, *see id.,* Minnesota courts refuse to recognize the defense in disputes involving contract law. *Id.* (citation omitted). In fact, the Minnesota Supreme Court only recognizes the defense of duress in contractual matters when the "agreement is coerced by physical force or unlawful threats." *Bond v. Charlson,* 374 N.W.2d 423, 428 (Minn.1985) (citing *Wise v. Midtown Motors, Inc.,* 231 Minn. 46, 42 N.W.2d 404, 407 (1950)). Since Johnson has failed to allege either the threat or the use of force by HBI at the time of the

Agreement, she cannot employ a duress defense to insulate herself against the terms of the arbitration agreement.

■ Finally, Johnson argues that insufficient consideration supports the arbitration agreement, rendering it unenforceable. Plaintiff's Memorandum in Opposition, at 5–6. Specifically, Johnson claims that, since she verbally accepted the position as an Associate Producer at KSTP before she signed the Agreement, no adequate, independent consideration supports the arbitration agreement. *Id.* HBI, however, represents that, before Johnson began work at KSTP, she was presented with the one-page Agreement, which included the arbitration agreement in the last paragraph. Defendant's Reply Brief, at 7. Moreover, HBI asserts that, after receiving the Agreement for her review and acceptance, Johnson signed it without ever objecting to its terms as a whole or the arbitration agreement in particular. *See id.,* at 6–7.

Under Minnesota law, an oral agreement made at or prior to a written contract cannot vary either the terms or conditions of the written document. *Thompson v. Thompson,* 78 Minn. 379, 81 N.W. 204, 205 (1899); *accord Samuel H. Chute Co. v. Latta,* 123 Minn. 69, 142 N.W. 1048, 1049 (1913); *Peterson v. Bengston,* 166 Minn. 494, 207 N.W. 20, 21 (1926). Accordingly, the Court finds that the written Agreement, signed by Johnson on September 28, 1994, serves as a final and complete expression of the terms and conditions of her employment with HBI. The Court therefore concludes that the written Agreement subsumes any prior, verbal agreement which existed between the two parties and governed their professional relationship. Consequently, the Court finds that adequate, independent consideration supports both the Agreement as a whole and the arbitration agreement in particular, and that Johnson and HBI agreed to arbitrate certain employment disputes.

### B. The Scope of the Arbitration Agreement

■ The Agreement specifically provides that the claims and disputes subject to arbi-

tration include, but are not limited to, "all disputes governed by the Employment Retirement Income Security Act, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and all state and local anti-discrimination laws and ordinances." Exhibit A to Affidavit of Margaret J. Batemen.

In her Complaint, Johnson asserts claims under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the MHRA. Specifically, Johnson alleges that HBI, through its employees, not only harassed and discriminated against her on the basis of her race, but also engaged in a pattern of retaliatory conduct, and ultimately discharged her when she tried to bring this problem to the attention of her superiors. *See* Complaint, at ¶¶ 13–21.

The Court therefore finds that all of Johnson's claims fall within the scope of the arbitration agreement.

## C. The Arbitrability of the Claims

As the Supreme Court recently emphasized, unless parties clearly and unmistakably express otherwise, courts, rather than arbitrators, determine whether the parties agreed to submit their dispute to arbitration. *First Options,* —— U.S. at ——, 115 S.Ct. at 1923. *See also AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418 (stating that "the question of arbitrability ... is undeniably an issue for judicial determination"). Therefore, given the absence of an express provision within the Agreement to the contrary, this matter is properly before the Court.

In general, arbitration agreements which encompass statutory claims are enforceable under the FAA. *See Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650–51. *See also Mitsubishi,* 473 U.S. at 636–37, 105 S.Ct. at 3358–59; *McMahon,* 482 U.S. at 238 and 242, 107 S.Ct. at 2343–44 and 2345–46; *Rodriguez de Quijas,* 490 U.S. at 484–87. The Court should therefore respect and enforce an arbitration agreement in the absence of an express congressional intent to preclude a waiver of judicial remedies for the violation of a statutory right. *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (citing *Mitsubishi,* 473 U.S. at

628, 105 S.Ct. at 3354–55). Johnson, of course, bears the burden of demonstrating that Congress intended to preclude the waiver of a judicial forum for the claims at issue. *See Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (citing *McMahon,* 482 U.S. at 227, 107 S.Ct. at 2337). Johnson can establish this intent by introducing evidence from either the statute itself or its legislative history, or by showing that there exists an inherent conflict between compulsory arbitration and the underlying purpose of the statute. *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (citing *McMahon,* 482 U.S. at 227, 107 S.Ct. at 2338).

### 1. Express Congressional Intent

An examination of Section 118 of the Civil Rights Act of 1991, Pub.L. 102–166, reveals express congressional approval for the use of arbitration to resolve Title VII disputes. *See* Pub.L. 102–166 (providing that "[w]here appropriate and to the extent authorized by law, the use of alternative dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under [Title VII]"). In its *Amicus* brief, the EEOC attempts to revise the plain meaning of this language by citing the remarks of two individual members of Congress. Specifically, the EEOC quotes both Senator Dole and Representative Edwards in an attempt to demonstrate that the language of Section 118 applies only to the knowing and voluntary use of the arbitration process to resolve specific disputes after they have arisen. *See* EEOC's *Amicus* Brief, at 19. In further support of its position, the EEOC notes that Congress rejected a legislative proposal which encouraged the use of mandatory arbitration to resolve Title VII disputes because it believed that the "approach would enable employers to refuse to hire workers unless they signed a binding statement waiving all rights to file Title VII complaints." *Id.* (citing H.R.Rep. No. 40(I), 102nd Cong., 1st Sess. 104 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 642 (stating that "American workers should not be forced to choose between their jobs and their civil rights")).

The Court disagrees with the EEOC's conclusion. First, remarks made by individual members of Congress during floor debates

typically serve as the least reliable form of legislative history since they not only brim with obvious bias but also remain subject to continuous amendment and supplementation throughout the legislative process. *See* Reed Dickerson, *Statutory Interpretation: Dipping into Legislative History,* 11 Hofstra L.Rev. 1125, 1131–32 (1983). *See also* William Keefe and Morris Ogul, *The American Legislative Process,* 258 (5th ed. 1981) (stating that "debate is . . . a curious melange of the opening lines of many speeches never heard on the floor, coupled with revised, sometimes totally new, remarks"). Secondly, while often more authoritative than remarks made on the floor of the House or Senate, committee reports frequently contain many of the same biases. *See Blanchard v. Bergeron,* 489 U.S. 87, 98–99, 109 S.Ct. 939, 946–48, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring). Thirdly, the Ninth Circuit, in its *Lai* decision, relied heavily upon both the remarks of Senator Dole and the language of House Report 40(I) in reaching its controversial decision. *See Lai,* 42 F.3d at 1304–05. As mentioned earlier, the *Lai* decision has met with wide-spread criticism in several Circuits for its inaccurate use of legislative history. *See Maye,* 897 F.Supp. at 107; *Beauchamp,* 918 F.Supp. at 1096–97. Furthermore, as the Ninth Circuit conceded in another case, a court can cite legislative history to support practically any proposition. *See Wallace v. Christensen,* 802 F.2d 1539, 1559 (9th Cir.1986) (Kozinski, J., concurring) (detailing the problems with affording committee reports controlling weight in judicial decisions).

The Court finds that Johnson failed to demonstrate the existence of an express congressional intent to preclude a waiver of judicial remedies for the violation of her statutory rights under Title VII in both the statute itself and its legislative history.

## 2. Inherent Conflict between Arbitration and Johnson's Statutory Rights

Recently, several Circuits have upheld arbitration agreements which cover Title VII disputes. *See e.g., Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1486 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699–700

(11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 933–34 (9th Cir. 1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 306 (6th Cir.1991); *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 229–30 (5th Cir.1991). However, all of these decisions apparently compel the arbitration of Title VII claims pursuant to the language of a specific Securities Registration U–4 Form. *See Metz,* 39 F.3d at 1486; *Bender,* 971 F.2d at 699–700; *Mago,* 956 F.2d at 933–34; *Willis,* 948 F.2d at 306; *and Alford,* 939 F.2d at 229–30. While the language of the U–4 Form obligates a signing party to arbitrate a wide variety of disputes, *see Willis,* 948 F.2d at 306 (citing the broad language of the provision), it provides a specific set of rules governing the arbitration process which are not only explicitly clear but also extremely fair to both parties. *See id.* at 310 (citation omitted). *See also Gilmer,* 500 U.S. at 30–31, 111 S.Ct. at 1654–55 (describing, in detail, the arbitration process outlined in the U–4 Form and its safeguards).

In the present case, Johnson argues that the terms of the arbitration agreement, while clear, are inherently unfair. Specifically, Johnson contends that the terms of the agreement significantly, if not completely, erode her statutory rights and remedies under Title VII, 42 U.S.C. § 1981, and the MHRA. Plaintiff's Memorandum in Opposition, at 2–3. According to the EEOC, this erosion amounts to a prospective waiver of Johnson's statutory rights which, the EEOC submits, is by definition neither knowing nor voluntary. EEOC's *Amicus* Brief, at 7–8. Consequently, both Johnson and the EEOC argue that, by preventing her from fully and effectively vindicating her statutory rights, the terms of the arbitration agreement run counter to federal policy and thus serve to invalidate the agreement. *Id.* at 8–10.

In response, HBI asserts that parties to a written arbitration agreement may structure their contractual relationship as they see fit. Defendant's Reply to the EEOC's *Amicus* Brief, Docket No. 18, at 8 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, ——, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995)). HBI also contends that while the arbitration agreement may deny

Johnson the full array of remedies available in a court of law, the mere limitation of remedies does not necessarily invalidate the arbitration agreement. Defendant's Reply to the EEOC's *Amicus* Brief, at 7 (citing *DeGaetano v. Smith Barney, Inc.*, 70 Fair Empl.Prac. Cases (BNA) 401, 405, 1996 WL 44226 (S.D.N.Y.1996)).

As emphasized on page 1453, an arbitration agreement generally serves only as a specialized choice-of-forum provision which identifies the "situs of the suit" and the specific set of procedures governing its resolution. *See Mitsubishi,* 473 U.S. at 630, 105 S.Ct. at 3355 (citing *Scherk,* 417 U.S. at 519, 94 S.Ct. at 2457). A party neither abandons nor relinquishes its substantive rights when it agrees to arbitrate a claim arising under federal statute. *See Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354). As the Supreme Court has made explicitly clear,

[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum. [The party] trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

*Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354.

Predictably, Johnson and the EEOC base their opposition to the arbitration agreement upon these two principles. *See* Plaintiff's Memorandum in Opposition, at 3. *See also* EEOC's *Amicus* Brief, at 9. Specifically, Johnson and the EEOC contend that:

1. the provision requiring her to file a written demand for arbitration "within 180 days after [her] dispute has arisen" severely and, possibly, impermissibly diminishes the statutes of limitations provided under Title VII, 42 U.S.C. § 1981, and the MHRA;

2. the provision limiting her award solely to "out-of-pocket damages" denies her • the far-reaching remedial rights afforded by Title VII, 42 U.S.C. § 1981, and the MHRA; and

3. the provision obligating her to pay the fees which she incurs during arbitration curtails her statutory right to recover attorneys' fees and costs in the event that she prevails on any or all of her claims.

*See* Plaintiff's Memorandum in Support of Its Opposition, at 2–3. *See also* EEOC's *Amicus* Brief, at 10–12.

Before the Court addresses these issues seriatim, it acknowledges the limited scope of its review. *See* page 1453, *infra.* Namely, under the FAA, the Court cannot exercise its discretion and examine the merits of an underlying claim once it finds that the dispute falls within the scope of a valid arbitration agreement. *See AT & T Technologies,* 475 U.S. at 648–49, 106 S.Ct. at 1418–19. However, Johnson directly challenges the validity of the arbitration agreement by arguing that its terms amount to a prospective waiver of her statutory rights. *See* Plaintiff's Memorandum in Opposition, at 2–3. *See also* EEOC's *Amicus* Brief, at 8.

The Court must therefore examine the arbitration agreement from two perspectives. First, the Court must ask whether this particular dispute falls within the scope of the arbitration agreement in operation between the parties. The Court, of course, has already answered this question in the affirmative. *See* pages 1456–1457, *infra.* Secondly, the Court must inquire into the validity of the agreement. Namely, the Court must determine whether the arbitration agreement between Johnson and HBI is unenforceable as a prospective waiver of Johnson's statutory rights. *See* EEOC's *Amicus* Brief, at 8. The Court, however, recognizes that, while it properly evaluates the validity of the arbitration agreement, *see Mitsubishi,* 473 U.S. at 627, 105 S.Ct. at 3354, 9 U.S.C. § 2, the arbitrator properly interprets the meaning of that agreement. *See AT & T Technologies,* 475 U.S. at 651–52, 106 S.Ct. at 1419–20. Accordingly, the Court cannot fully determine whether the arbitration agreement serves as a prospective waiver of Johnson's statutory rights until the arbitrator interprets and applies the agreement. The Court can note several possible consequences of an

arbitrator's decision however.[1] The Court addresses these issues below.

### a. The "180 Days" Provision

In general, Title VII affords an aggrieved person only 180 days to file a charge with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1) (1996). The statute, however, provides one exception to this rule. Specifically,

> in a case of an unlawful employment practice [where] the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings [in the matter,] such charge shall be filed ... within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings ..., whichever is earlier[.]

42 U.S.C. § 2000e–5(e)(1).

Furthermore, under the provisions of Title VII, an aggrieved person must wait 60 days before filing a charge with the EEOC after initiating proceedings with a state or local agency charged with the review discrimination claims. *See* 42 U.S.C. § 2000e–5(c). However, if the state or local agency terminates its proceedings in the matter before the 60 days expire, then the aggrieved person may file immediately with the EEOC. *Id.* Therefore, an aggrieved person acts in a timely manner under Title VII when she files a charge with the EEOC after initiating a proceeding with the appropriate state or local agency which subsequently terminates its review of the matter within 300 days of the alleged unlawful employment practice. *Id.; Worthington v. Union Pacific R.R.*, 948 F.2d 477, 480–81 (8th Cir.1991); 29 C.F.R. § 1601.13(a)(4).

In the case at bar, there exists a state agency with jurisdiction over the claims asserted in Johnson's charge of discrimination. *See* 42 U.S.C. § 2000e–5(e)(1). The Minnesota Department of Human Rights

("MDHR") possesses the authority to investigate discriminatory practices and to receive written charges alleging civil rights violations. Minn.Stat. 363.01, *et seq.*. Furthermore, the EEOC has designated the MDHR as a state fair employment (FEP) practices agency for the purposes of the deferral provisions of Title VII. *See* C.F.R. § 1601.74(a) (listing MDHR as a designated FEP agency).

Johnson initiated her proceeding with the MDHR, pursuant to 42 U.S.C. § 2000e–5(e)(1), by filing a charge with both the MDHR and the EEOC on November 21, 1995, approximately 225 days after the alleged unlawful employment practice occurred. *See* July 19, 1996, Letter of John A. Fabian, at 1. While Johnson filed her charge with the MDHR on a form provided by the EEOC, the document was simultaneously addressed to both agencies. *See* Attachment B to July 19, 1996, Letter of John A. Fabian. Taking judicial notice of the workshare agreement which exists between the EEOC and the MDHR, the Court recognizes that each agency serves as the agent of the other for the purpose of receiving a charge. Therefore, when Johnson filed her charge with the EEOC, the EEOC accepted the charge for the MDHR and itself. *See EEOC v. Commercial Office Products*, 486 U.S. 107, 110, 108 S.Ct. 1666, 1668–69, 100 L.Ed.2d 96 (1988) (finding that workshare agreements between the EEOC and state agencies are valid and enforceable). Finally, the workshare agreement provides that the EEOC will initially process all charges. By waiving its right to the 60–day deferral period, the MDHR effectively terminates its proceedings in the matter. *See Commercial Office Products*, 486 U.S. at 110, 125, 108 S.Ct. at 1668–69, 1676 (finding that states can waive their exclusive right to initially process charges and that such a waiver terminates state proceedings). Consequently, the EEOC immediately obtains jurisdiction over the charge. *Compare Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65

---

**1.** The Court recognizes that an entirely different standard governs the review of the merits of an arbitrator's decision. *See First Options*, —— U.S. at ——, 115 S.Ct. at 1923. By agreeing to arbitrate a dispute, a party relinquishes much of the practical value of its right to receive a judicial decision on the merits of its claim. *Id.* While the party still can ask the Court to review the arbitrator's decision, the Court will only set aside that decision in extremely unusual circumstances. *Id.* (citations omitted).

L.Ed.2d 532 (1980) (finding that, without a waiver, the EEOC has no jurisdiction within the first 60 days) *with Worthington,* 948 F.2d at 482 (finding that the prospective waiver provision of a workshare agreement both initiated and automatically terminated state proceedings). Accordingly, Johnson filed her charge with the EEOC on November 21, 1995. *See* Attachment B to July 19, 1996, Letter of John A. Fabian. Subsequently, on November 30, 1995, the EEOC issued Johnson a "Right to Sue" letter, pursuant to 42 U.S.C. § 2000e–5(f)(1), affording her 90 days to commence an action in the appropriate United States district court. *See* Attachment A to July 19, 1996, Letter of John A. Fabian. Sixty-two days later, on February 1, 1996, Johnson filed her Complaint in the United States District Court for the District of Minnesota. *See* Complaint. Under the provisions of Title VII, Johnson's Complaint was filed in a timely manner.

Under 42 U.S.C. § 1981, Johnson has at least two years to file a complaint in this matter. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (holding that, in an action under 42 U.S.C. § 1981, a federal court must apply the statute of limitations provided by corresponding state law). *See also* Minn. Stat. § 541.05 (1994) (providing a six year statute of limitations for certain actions where liability is created under statute); Minn.Stat. § 541.07 (1994) (providing a two year statute of limitations for numerous civil actions).

Under the MHRA, Johnson may bring a claim within one year of the alleged unlawful employment practice. Minn.Stat. § 363.06, Subd. 3.

Under applicable law, the arbitrator properly decides the meaning of the arbitration agreement. However, should the arbitrator find that the terms of the arbitration agreement which require Johnson to file her charge "within 180 days after [her] dispute has arisen" bars the present action, the agreement would contravene federally and state established statutes of limitations, possibly rendering the agreement unenforceable as unconscionable. A final determination of this issue must be postponed until this matter has been addressed by the arbitrator.

**b. The "Out-of-Pocket Damages" Provision**

Under Title VII, 42 U.S.C. § 1981, and the MHRA, Johnson enjoys a vast array of remedial rights, including not only back pay but also compensatory and punitive damages. *See Landgraf v. USI Film Products,* 511 U.S. 244, –––– ––––, 114 S.Ct. 1483, 1506–07, 128 L.Ed.2d 229 (1994) (recognizing the existence of compensatory and punitive damages for violations of Title VII); *Easley v. Anheuser–Busch, Inc.,* 758 F.2d 251, 263 (8th Cir.1985) (allowing compensatory damages under 42 U.S.C. § 1981); *Evans v. Ford Motor Co.,* 768 F.Supp. 1318, 1327 (D.Minn. 1991) (Murphy, J.) (affording compensatory and punitive damages under the MHRA); *Lamb v. Village of Bagley,* 310 N.W.2d 508, 512 (Minn.1981) (providing the same).

The terms of the arbitration agreement, however, specify that, "[t]o the extent permitted by law, any award shall be limited solely to [Johnson's] out-of-pocket damages." Exhibit A to the Affidavit of Margaret J. Batemen. While HBI states that the term "out-of-pocket damages" includes economic damages, such as back pay and lost employment benefits, but excludes punitive damages and any other form of non-pecuniary loss, such as pain and suffering, inconvenience, mental anguish, and loss of enjoyment or quality of life, *see* July 3, 1996, Letter of Gregory J. Stenmoe, at 2, it maintains that, despite this limitation, Johnson preserves her ability to effectively vindicate her statutory cause of action under the arbitration agreement. Defendant's Reply to the EEOC's *Amicus* Brief, at 7–9.

As emphasized twice above, an arbitration agreement serves only as a specialized choice-of-forum provision which identifies the "situs of the suit" and the specific set of procedures governing its resolution. *See Mitsubishi,* 473 U.S. at 630, 105 S.Ct. at 3355 (citing *Scherk,* 417 U.S. at 519, 94 S.Ct. at 2457). Although Johnson and HBI may structure their contractual relationship as they see fit, *see Mastrobuono,* –––– U.S. at ––––, 115 S.Ct. at 1216, Johnson neither abandons nor relinquishes her substantive

rights when she agrees to arbitrate a claim arising under federal statute. *See Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354).

Again, the arbitrator properly decides the meaning of the arbitration agreement. However, should the arbitrator find that the terms of the arbitration agreement deny Johnson the opportunity to recover the full array of statutory remedies established under state and federal law, the agreement would contravene federally and state established remedial measures, possibly rendering the agreement unenforceable as unconscionable. A final determination of this issue must also be postponed until this matter has been addressed by the arbitrator.

### c. The "Attorney's Fees" Provision

Under Title VII, Johnson serves as her own "private attorney general," *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), who vindicates a policy of the highest congressional priority by seeking redress for her injuries. *See id. See also Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974); *McKennon v. Nashville Banner Publishing Co.,* — U.S. —, —, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995). Accordingly, Title VII allows Johnson to collect reasonable attorney's fees if she prevails in her claim. *See* 42 U.S.C. § 2000e–5(k). *See also Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (establishing that, under Title VII, a prevailing plaintiff receives attorney's fees in all but the most exceptional of circumstances). Both 42 U.S.C. § 1988 and the MHRA contain similar provisions. *See* 42 U.S.C. § 1988(b) (1996) (providing for the recovery of attorney's fees in actions arising under 42 U.S.C. § 1981) *and* Minn.Stat. § 363.14 Subd. 3 (allowing a court, in its discretion, to award the prevailing party reasonable attorney's fees). However, the terms of the arbitration agreement prevent Johnson from collecting any attorney's fees incurred as a result of arbitration. Specifically, the arbitration agreement states that, "[r]egardless of the award, each party shall be responsible for [its] own fees for arbitration." Exhibit A to the Affidavit of Margaret J. Batemen.

The Court reiterates one last time that the arbitrator properly decides the meaning of the arbitration agreement. However, should the arbitrator find that the terms of the arbitration agreement prevent Johnson from recovering reasonable attorney's fees in the event that she prevails on any or all of her claims, the agreement would contravene federally established remedial measures, possibly rendering the agreement unenforceable as unconscionable. A final determination of this issue must be postponed until this matter has been addressed by the arbitrator.

### III. CONCLUSION

Arbitration is a matter of contract between the parties. *See First Options,* — U.S. at —, 115 S.Ct. at 1924 (citations omitted). *See also AT & T Technologies,* 475 U.S. at 648, 106 S.Ct. at 1418 (citing *Steelworkers,* 363 U.S. at 582, 80 S.Ct. at 1353). Therefore, a court can only compel the arbitration of a dispute which the parties agreed to arbitrate. *See Steelworkers,* 363 U.S. at 582, 80 S.Ct. at 1353. In the face of an explicit arbitration provision, a court must resolve all doubts in favor of arbitration, *see AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419 (citation omitted), but, while that court determines whether the parties agreed to arbitrate a particular dispute, it cannot rule on the merits of any underlying claims. *Id.*

This Court employed a three-step inquiry, *see Mitsubishi,* 473 U.S. at 626–27, 105 S.Ct. at 3353–54, first addressing whether an arbitration agreement exists between the parties, then deciding whether this particular dispute falls within the scope of that agreement, and finally reviewing whether legal constraints, independent of the agreement, prevent the arbitration of this dispute.

The Court found that an arbitration agreement exists between the parties. The Court also found that the present dispute falls within the scope of that agreement. While the Court found no express Congressional intent to preclude a waiver of judicial remedies for violation of Johnson's rights under Title VII, 42 U.S.C. § 1981, or the MHRA, the Court

cannot determine whether the arbitration agreement is enforceable or unenforceable as unconscionable until the arbitrator has interpreted the meaning of the agreement. However, the Court has noted several possible consequences of various interpretations.

In order to allow the arbitrator to interpret the arbitration agreement, the dispute should be referred to arbitration, and this judicial proceeding should be stayed. The Court should retain jurisdiction over the matter.

Based on the foregoing, and upon all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant Hubbard Broadcasting Inc.'s Motion to Compel Arbitration and Stay Proceedings (Docket No. 4) be **GRANTED;**

2. The parties' dispute be referred to arbitration;

3. The Court stay all judicial proceedings pending the outcome of the arbitration; and

4. The Court retain jurisdiction over this matter.

**AND IT IS HEREBY ORDERED** that:

1. The Equal Employment Opportunity Commission's Motion for Leave to Participate as *Amicus Curiae* (Docket No. 14) is **GRANTED.**